(No. 32152.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
E. H. GHOLSON *et al.,* Appellants.

*Opinion filed May 22, 1952.*

Bristow, J., took no part.

Besse & Besse, of Sterling, and Hugh E. Chance, of Davenport, Iowa, (Robert W. Besse, and L. Vernon Frye, of counsel,) for appellants.

Ivan A. Elliott, Attorney General, of Springfield, and Lawrence A. Smith, State's Attorney, of Savanna, (Harry L. Pate, of Tuscola, of counsel,) for the People.

Mr. Justice Maxwell delivered the opinion of the court:

We have granted leave to appeal to allow further review of an affirmance by the Appellate Court, Second District, in *People* v. *Gholson,* 344 Ill. App. 199, of an order of the circuit court of Carroll County finding the respondents, E. H. Gholson and his wife Clara Gholson guilty of contempt of court, and thereupon fining each $250 and sentencing Gholson to 10 days in jail.

The charge of contempt grew out of the acts allegedly committed at the time that Gholson, a chiropractor, was being tried by a jury on a criminal charge of violation of the Illinois Medical Practice Act. On November 21, 1949, Gholson's trial for a violation of the act was set for December 12, and the defendant was given a list of the jury panel which had been drawn for his trial. It appears that on December 7, Gholson and his wife distributed through the mails to "boxholder" or "occupant" of certain residences and post-office boxes an advertisement which was a reprint of "The Chiropractic News," a newspaper-type periodical published by the Chiropractic Association. The edition reprinted was headed with Gholson's name, contained a lead article which was an autobiography laudatory of Gholson and his wife, and the remainder of the four pages in the reprint contained articles extolling the chiropractic profession and its progress. On December 8, an advertisement, with a picture, describing Gholson's success in treating a young polio victim, whose prior medical treatment had been to no avail, was published in two generally circulated newspapers in Carroll County.

On the day of Gholson's trial, a motor caravan of several hundred people, seemingly in sympathy with Gholson, appeared and all of these people attended the trial.

Thereupon, on the same day, December 12, a contempt petition was filed against Gholson and his wife, charging them with deliberate and wrongful intent to influence the panel of jurors by the publication and circulation of the aforementioned advertisements in newspapers, allegedly received and read by some of the jurors. It was also alleged that some of the mailed advertisements were received and read by the jurors. The petition further charged the defendants with wrongful and unlawful intent to influence the jury panel and the court by organizing the motor caravan and the attendance of its members at the trial, which created some disturbance in the courtroom.

The defendants in their verified answers admitted the publication and circulation of the advertisements in question, but averred that they were part of a general advertising policy pursued by the defendant Gholson, and they denied any unlawful intent in connection therewith. Both defendants admitted having pretrial knowledge of the motor caravan, and each admitted having inquired of police authorities several days before the trial whether a traffic escort would be available for the caravan. They alleged this escort was requested for the purpose of avoiding a traffic hazard. The defendants admitted that a number of people were present in the courtroom the day of Gholson's trial, but denied any responsibility for organization of the group, or that it had any illegal purpose.

The defendants contend that they are charged with indirect criminal contempt of court and that under the law of this State their verified answers denying the alleged wrongful acts are conclusive on the court and constitute a complete purge of such contempt.

The rule relied upon by defendants was known to the common law as the doctrine of "purgation by oath." Under this rule, in cases of indirect or constructive contempt, the sworn answer of the alleged contemner fully denying the charge is conclusive and entitles him to a discharge, leaving the remedy against him, if his answer is considered false, prosecution for perjury. The answer was not traversible and no evidence in contradiction thereof could be heard. In cases where intention is an essential element of the offense, and the acts are ambiguous and capable of two constructions, the sworn answer which sufficiently disclaims or disavows any intention to commit contempt is conclusive and entitles defendant to a discharge. 17 C.J.S., Contempt, sec. 83b.

If this rule is applicable in the instant case, we view defendants' contention unassailable. The petition charges, in substance, that defendants participated in the organiza-

tion of this caravan and published and circulated the articles with an intent to influence and intimidate the court and jury. Any participation in the organization of the caravan and all intention to influence or intimidate the court or jury are specifically and sufficiently denied, and, under the rule, the court cannot find otherwise. This leaves nothing admitted except defendants' customary advertising, without unlawful intent, and defendants' pretrial knowledge of the fact that a group of persons, interested in chiropractic, would attend the trial. This knowledge was not concealed but was reported to the court through two of its officers, the sheriff and his deputy. Under this rule, defendants have purged themselves of any overt acts which could be contemptuous *per se* and have purged themselves of any unlawful or contemptuous intent in regard to any ambiguous acts, and the court is powerless to find them guilty or to make further inquiry into their denials.

Contempt of court has been defined as any act which is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity. (*Ex Parte Holbrook,* 133 Me. 276, 177 Atl. 418, 420.) Contempts of court have been classified as civil or criminal, and further classified as direct or indirect (also sometimes called constructive or consequential.) A direct contempt is a contempt committed in the presence of the court while it is in session. An indirect, constructive or consequential contempt is a contempt outside the presence of the court. (*People* v. *Hagopian,* 408 Ill. 618; *People* v. *Harrison,* 403 Ill. 320.) A criminal contempt is conduct that is directed against the dignity and authority of the court or a judge acting judicially. A civil contempt ordinarily consists in failing to do something ordered to be done by a court in a civil action for the benefit of an opposing party therein. (*People* v. *Redlich,* 402 Ill. 270; *Wilson* v. *Prochnow,* 359 Ill. 148.) The lines of demarcation between direct and indirect contempt,

and between criminal and civil contempt can be, and are, in many instances, very indistinct and even imperceptible, for the simple reason that many acts involve the elements of both, and, as a consequence, confusion has resulted in the court's attempts to classify them. Direct contempts may be dealt with summarily, but the procedure in indirect contempt is governed by the principles of due process of law. Penalties for criminal contempt are purely punitive, while penalties for civil contempt are remedial, coercive and punitive. (*People* v. *Redlich,* 402 Ill. 270.) Review in criminal contempt is had by writ of error, and review in civil contempt is had under the provisions of the Civil Practice Act. *People* v. *Pomeroy,* 405 Ill. 175.

We have briefly summarized the classifications and distinctions to show the reasons for the differences in procedure. All contempt proceedings are summary but direct contempt proceedings are more so. Direct criminal contempts may be dealt with summarily without the formality of pleading, notice, or answer because the acts occur in the presence of the judge and presumably within his personal observation and knowledge. Indirect contempts admitted by the contemner in open court may also be dealt with summarily. But indirect contempts, where the presiding judge lacks personal knowledge of the whole or some essential part thereof, require due process, *i.e.,* notice, pleadings and an opportunity to be heard. (*People* v. *Pomeroy,* 405 Ill. 175.) In all contempt proceedings the People are the prosecution—not the court or the judge thereof—and in every contempt proceeding, except indirect criminal contempt where the doctrine of "purgation by oath" is applied, the People have the right to produce evidence to sustain their case as well as the alleged contemner to refute it.

The power to punish as contemptuous, acts obstructing, impeding or burdening orderly and impartial administration of the judicial process is inherent in the courts and has been since their inception. Yet the common-law rule

of purgation by oath practically emasculates that inherent power where a contemner is willing to assume the usually slight risk of a conviction for perjury. By the mere verified answer of the accused the court is deprived of its power to punish for obstructing its judicial functions, it is deprived of jurisdiction to punish contempts perpetrated against it and that jurisdiction is vested in criminal procedure where the power to punish is vested in a jury, in another court, or even in another county by change of venue.

While this rule was firmly established in the common law, its origin and the reasoning which gave it birth are obscure. It may have been an outgrowth of the privilege against self incrimination where the accused was required to answer the prosecution's interrogatories and the rule developed that, if he did answer, his statements were conclusive. (Harvard Law Review, Curtis, vol. 41, p. 51.) In *United States* v. *Shipp*, 203 U.S. 563, in speaking of this rule, Mr. Justice Holmes said, "On this occasion we shall not go into the history of the notion. It may be that it was an intrusion or perversion of the canon law, as is suggested by the propounding of interrogatories and the very phrase 'purgation by oath' (*juramentum purgatorium*). If so, it is a fragment of a system of proof which does not prevail in theory or as a whole; and the reason why it has not disappeared perhaps may be found in the rarity with which contempts occur. It may be even now, if the sole question were the intent of an innocent act, the proposition would apply." The court there rejected the contention of the defendants that their verified answer purged them of criminal contempt when their answer denied the perpetration of overt acts outside the presence of the court, and refused to apply the rule of "purgation by oath." Following this decision, the question was again before the United States Supreme Court in *Clark* v. *United States*, 289 U.S. 1, and the court, speaking through Mr. Justice Cardozo, had this to say: "The oath of a contemnor is no longer a bar to

a prosecution for contempt. Little was left of that defense after the decision of this court in *United States* v. *Shipp,* 203 U.S. 563, 574, 27 S. Ct. 165, 51 L. ed. 319, 8 Ann. Cas. 265. Since then there has been no purgation by oath where an overt act of defiance is the gist of the offense. The point was reserved whether sworn disavowal would retain its ancient force 'if the sole question were the intent of an ambiguous act.' The time has come, we think, to renounce the doctrine altogether and stamp out its dying embers. It has ceased to be a defense in England since 1796. Matter of Crossley, 6 Term Reports 701. It has been rejected generally in the States. [Citations.] It has even lost, since the decision in the *Shipp case,* the title to respect that comes of a long historical succession. It has taken its place with ordeal and wager of law and trial by battle among the dimly remembered curios of outworn modes of trial. Thayer, *op. cit., supra,* p. 8, *et seq.*

In the instant case, the lower court and the parties proceeded under the doctrine of "purgation by oath," and the court found that the answers of the defendants were insufficient to purge them of the alleged contempt. As we have pointed out above, we are of the opinion that the answers were sufficient under this rule and the trial court erred in finding defendants guilty and that judgment is reversed.

However, we do not believe the defendants should be discharged. They were charged with the serious offense of attempting to influence and intimidate the court and jury and we believe an inquiry should be made on the issues presented by the charges and the answers to determine their guilt or innocence.

It is apparent from an examination of the above authorities and the cases cited therein that many modern authorities no longer follow this anachronistic rule. It has ceased to be a defense in England, where it first became a part of the common law, since 1796, and we see no

reason why it should continue to be the law of this State when all reason, logic and custom in analagous situations militate so strongly against it.

We are fully aware of the numerous decisions of this court beginning with *Crook* v. *People*, 16 Ill. 534, and continuing to *People* v. *Hagopian*, 408 Ill. 618, wherein the rule is consistently stated and applied. An examination of all these cases discloses that in every one the rule was stated and applied but in not one instance was any attempt made to justify or explain it.

We do not believe a court can adequately, promptly and efficiently protect and preserve its judicial authority and processes, the rights of litigants, and the interest of the people in the integrity and authority of their courts, without power to inquire into and determine if contumacious acts such as alleged in the instant case have been perpetrated against the court. We believe that if the contemner can, merely by denying the charges, deprive the court of authority to inquire into the truthfulness of his denial not only of his intentions but also as to his overt acts, that would tend to destroy rather than to uphold public confidence and respect in our courts. The alternative resort to prosecution for perjury is without reason, ineffectual and inadequate. A person could admit any ambiguous acts and merely deny evil intention. Prosecution for perjury would be impossible. If a contemner bribes or intimidates a juror in the courtroom, the court can punish him immediately, without charges, but if the same acts are performed outside the courtroom the contemner by his oath can deprive the court of any jurisdiction to inquire into the matter or punish him under any circumstances. It seems to us the guilt of the contemner and the injury to the authority and integrity of the court are the same in both instances and the court should have the same power to protect its integrity by an orderly judicial inquiry into alleged acts of indirect criminal contempt.

The instant case emphasizes the futility of the rule. The affront, if any there was, was directly in the face of the presiding judge. He came to open his court for the purpose of conducting the court's business in a dignified, orderly, and impartial manner. He found his courtroom packed with spectators alleged to be there in pursuance of an organized plan by a party to be tried for a criminal offense for the purpose of influencing and intimidating him and his jurors. He found charges that the same defendants had published and circulated printed articles to influence the jury so that the court would be compelled to try that case without fair and impartial jurors. Yet the accused defendants, by merely filing a verified denial, were able to deprive him of any power or authority to make any inquiry as to why his courtroom and his jurors had been transformed from a dignified orderly court and a panel of fair and impartial jurors into an alleged mob meeting and a panel of jurors which had been tampered with. The dignity and respect of the court demand that that court, there and then, have full power and authority to immediately make a full and complete investigation to determine if those charges are true and, if so, to mete out appropriate punishment to the offending parties.

The doctrine of "purgation by oath" will no longer be adhered to by this court, and all previous decisions of this court upholding and applying that doctrine, in that respect, are hereby expressly overruled.

The judgment of the circuit court of Carroll County is reversed and this cause is remanded to that court for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

Mr. JUSTICE BRISTOW took no part in the consideration or decision of this case.