**People of State, of Illinois, Plaintiff-Appellee, v. Clayton E. Gardner, Defendant-Appellant.**

**Gen. No. 10,697.**

Opinion filed September 22, 1953. Released for publication October 9, 1953.

VICTOR P. MICHEL, of Peoria, for appellant.

JAMES P. KELLSTEDT, State's Attorney of Peoria County, of Peoria, for appellee; ROBERT E. HUNT, Assistant State's Attorney, of Peoria, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

Clayton E. Gardner had been convicted of violating the Illinois Motor Vehicle Law and his driver's license was revoked and suspended for a period of one year. This order was entered on June 9, 1952. On October 20, 1952, Clayton Gardner was arrested for not making a stop at a through street while driving his automobile in the City of Peoria, Illinois.

The State's Attorney of Peoria county filed an information in the county court of said county, charging

that the defendant had violated the law by driving an automobile contrary to the order of the county court after his driver's license had been revoked. There was a rule entered by the court for the defendant to show cause why he should not be adjudged in contempt of court and sentenced therefor.

The defendant, Gardner, filed his answer and denied that he had driven a car as charged in the information. This answer was sworn to. The court heard evidence both for and against the defendant, and found the defendant guilty and sentenced him to the county jail for a period of sixty days. It is from this order that an appeal has been perfected to this court.

■■ In the State's Attorney's brief he has stated that one of the witnesses for the defendant, Thomas Combs, who testified that he was driving the car instead of Gardner, has been convicted of perjury for so swearing, and in the argument he has argued this as tending to prove that Gardner was guilty as charged in the information. The appellant, Gardner, has made a motion to strike the appellee's brief and argument from the files, as such matters do not appear in the record and were not considered by the trial judge, and therefore were made by counsel for the appellee with the intent to prejudice the rights of the appellant, Clayton Gardner. Certainly this matter has no place in appellee's brief, or in his argument and should not have been included therein, and could only tend to prejudice this court in passing upon the merits of this appeal. The motion was taken with the case and in view of the conclusion we have reached in regard to its merits, the motion to strike will be denied.

Three policemen of the City of Peoria at approximately 2:00 a. m. on October 20, 1952, were in a squad car patrolling the streets in the City of Peoria. They received a call that there had been a burglary at a fill-

262

ing station and to be on the lookout for a light or cream colored convertible car with two occupants. They discovered such a car and gave chase to it. They chased it several blocks and saw one man jump out of the car and run into a house. They pursued the car further and finally they saw a man jump out of the car on the driver's side and run into a house. They were about fifty yards behind this car when they saw it stop and the man jump out. Their car proceeded up to the house. Two of the officers got out and ran up to the house and asked the lady who came to the door, if anybody had entered the house and she told them some one had. The officers then went into the room where Gardner was sick standing by the kitchen sink. They asked him why he ran away from them and they all testified that Gardner said the reason he ran was because he was driving a car without a driver's license, and the County Judge told him that if he was caught doing it he would send him to jail.

When the first two officers went into the house, the driver of the police car got out and searched the car that they had been following, but found nothing to indicate that the men were the ones who had burglarized the filling station. He immediately followed the other officers into the house and all three officers testified to the statement of the defendant.

A young man by the name of Thomas Combs testified that he was driving the car all the time that they were being pursued by the police; that as they drove up to the house, both he and Gardner jumped out of the car and he ran into the house and jumped into a bed with his clothes on; that he had been staying at the Combs' home for about a month; that when he jumped out of the car he left the engine running and Gardner went back to the car and stopped the engine and took out the keys, then came on into the house. He said that one of

263

the officers brought Gardner into the bedroom to get a jacket and flashed his flashlight around the room; that he was not covered up, but had his face hid.

Clayton Gardner testified that he had not driven the car at any time since his license had been suspended, and was not driving the car that evening; that Combs was driving it the whole time; that he and Combs and the boy that jumped out of the car had been out with three girls and it was about four o'clock when they got home. He denied that he had made the statement to the police that he was driving the car, and was afraid that if he was caught that he would be put in jail, because he didn't have a driver's license. The mother, Mrs. Gardner, testified that she knew nothing of what happened outside of the home. She testified that she looked into the bedroom and Combs was covered up with a quilt.

Each of the policemen testified that he did not know Gardner before this occurrence and had no idea who was in the car until they saw him get out and go into his home; that they did not know that his license had been suspended, and never knew that he had been in any trouble, but they arrested him for running the stop sign.

 It is conceded that the contempt of court, if any, was done out of the presence of the court, and what would be commonly termed criminal contempt, and it being such, the proof of the defendant's guilt must be proven beyond a reasonable doubt. *People v. Spain,* 307 Ill. 283. As before stated, the defendant's answer was verified and denied that he had driven the car without a license and denied that he was in any way guilty of contempt of court. This, under the old law would be a complete defense to the charge of the contempt of court, as the court then would have had to have taken the answer as true, and if the defendant had sworn falsely in any material matter in the answer, he

could then be punished by an indictment for perjury, and this would be the only remedy. This had been the settled law of the State of Illinois until May 1952, when the Supreme Court in the case of *The People v. Gholson,* 412 Ill. 294; at the conclusion of the case, use this language: "The doctrine of 'purgation by oath' will no longer be adhered to by this court, and all previous decisions of this court upholding and applying that doctrine, in that respect, are hereby expressly overruled."

As before stated, the court heard evidence both for and against the defendant in the case, and he found that the three police officers' testimony was more worthy of belief than that of the defendant. It cannot be argued that the police officers were prejudiced against the defendant, because they did not know him and had no reason to testify falsely in regard to the matter. One of the policemen testified that Gardner asked to go into the bedroom to get his jacket; that he went with him into the bedroom where Combs claimed he was lying uncovered; that Gardner turned on the electric light in the bedroom to get his jacket; that it was a small bedroom and he did not see Combs lying on the bed. It hardly seems reasonable, that if Combs was there the policeman would not have seen him. This fact strongly discredits the testimony of Combs, when he testified that he was the one driving the car.

█ The trial court saw and heard the witnesses testify. He was in a much better position to judge the credibility of the witnesses than a court of review, and it appears to us that the evidence fully sustains his finding that the defendant was guilty of contempt of court, by driving an automobile in violation of the order of court when his license was revoked, and the judgment appealed from is affirmed.

*Judgment affirmed.*