People of State of Illinois, Defendant in Error, v. Charles F. White, Plaintiff in Error.

Gen. No. 46,788.

First District, Third Division.

February 1, 1956.

Released for publication February 24, 1956.

Edward J. Fleming, of Chicago, for plaintiff in error; Charles F. White, pro se, of Chicago, plaintiff in error.

John Gutknecht, State's Attorney of Cook County, of Chicago, for defendant in error; Gordon Nash, Charles D. Snewind, Francis X. Riley, and William Sylvester White, Assistant State's Attorneys, all of Chicago, of counsel.

JUDGE FEINBERG delivered the opinion of the court.

Plaintiff in error, a member of the bar, appeals from an order finding him guilty of direct contempt of court and assessing a fine of $100 against him.

The finding of contempt is predicated upon his refusal to comply with a verbal direction of the court to produce a photostatic copy of a witness's statement. There was on trial before the court a personal injury suit against the Pennsylvania Railroad, plaintiff in error representing the railroad. He called Otto J. Kel-

ler, an occurrence witness, on behalf of the railroad. The witness was not interrogated on direct examination about any statement he had given shortly after the accident involved in the suit on trial, nor was it exhibited to him on direct examination. His testimony on direct examination showed no need to refresh his recollection by the statement in question. On cross-examination it developed the witness Keller, before appearing on the witness stand, had been to plaintiff in error's office for interview and interrogation concerning the accident.

It further appears that plaintiff in error had in his office a photostatic copy of the original statement the witness had given to a claim agent, and that the witness did not read the statement in plaintiff in error's office, but it was discussed with him. The following then transpired upon cross-examination:

"Q. Where did you see Mr. White?

"A. Up in his office.

"Q. And when you talked about it then did you see any statement then?

"A. Yes, sir, I did.

"Q. What statement did you see?

"A. Well, the statement I gave Mr. Whipple.

"Q. Was it up there at the time? Did Mr. White have it? He did have it? Tell me, did he have it or didn't he?

"A. Yes.

"Q. Did it have your signature on it?

"A. Yes, sir.

"Mr. White: I am going to object to all this, if the Court please.

"The Court: Overruled.

"Mr. Coghlan: Q. Now, and it was signed by you?

"A. Yes.

"Q. Sir?

"A. Yes.

430

"Mr. Coghlan: May I have it, please?

"Mr. White: No, sir. I take exception on that conduct and I want to be heard on a motion.

"Mr. Coghlan: The witness has used the document to refresh his recollection.

"Mr. White: I want to be heard on a motion.

"The Court: Very well. We will retire to chambers and the reporter will come in, please."

Out of the presence of the jury, plaintiff in error moved to declare a mistrial because of the prejudicial conduct of counsel in making a demand for the statement in the presence of the jury. This motion was overruled. When the hearing resumed in the presence of the jury, the witness was further cross-examined as to whether the statement, which was discussed in plaintiff in error's office but was not read by the witness, refreshed his recollection. The record discloses the following questions and answers:

"Q. Did it refresh your memory?

"A. Well, it probably did some.

"Q. What did it refresh your memory about?

"Mr. White: This is all objected to, if the Court please.

"The Court: Overruled.

"The Witness: A. Well, it refreshed it this much, I remembered about the motorcycle going through under the gate.

"Mr. Coghlan: Q. Up to the time you read the statement or after you went over it, you did not remember the motorcycle going through the gate; is that right?

"Mr. White: That is objected to.

"The Court: Overruled.

"The Witness: A. Well, I still knew about it, you know.

"Mr. Coghlan: Q. Please. You said it refreshed your recollection.

"Mr. White: Let him finish his answer.

431

"Mr. Coghlan: Q. About the motorcycle going through the gate?

"The Court: Let him finish his answer. Finish your answer.

"The Witness: A. The minute they notified me I was to be a witness up here about what the accident was, then I remembered about the motorcycle going through under the gate. That was all."

Then followed another demand by counsel for the production of the statement of the witness referred to, and again plaintiff in error objected to the "flagrant misconduct" of counsel in repeating the demand and renewed his motion to withdraw a juror and declare a mistrial. Plaintiff in error stated to the court:

"I say, for the record, I do not have that statement, I never did have it. I never saw it. I did have a photostatic copy in my office a week or so ago. I do not have it here."

The record further discloses the following:

"Mr. Coghlan: Do you have the photostatic copy with you today, sir?

"Mr. White: Not here.

"The Court: No?

"Mr. Coghlan: Will you send to your office and procure the copy of the statement, please?

"Mr. White: I will not.

"The Court: That leaves me no alternative than to enter an order upon you to produce the photostatic copy. The motion for a mistrial is denied. Counsel has a right to demand the document, as I understand the law. You refuse to produce it, I will have to enter an order upon you to do so in the presence of the jury.

"Mr. White: I do not think you should, Judge.

"The Court: That is the way we will do it."

Whereupon, the following proceedings were had in the courtroom, in the presence of and hearing of the jury:

432

"The Court: The motion for a mistrial is denied. Mr. White, will you produce the statement?

"Mr. White: On the basis I stated, under the Supreme Court rules and decision I cited, the statement, that is not mine. It is improper. It is a statement prepared in the preparation of the defense of a law suit and, in my opinion, counsel is not entitled to it.

". . .

"The Court: . . . The Court has considered the decision by both sides. The Court is of the opinion that the decisions cited by Mr. White are not applicable to the situation. For that reason, the Court orders Mr. White to produce the statement.

"Mr. White: I do not have it.

"The Court: Do you have it at your office?

"Mr. White: I have a photostatic copy.

"The Court: Will you produce it?

"Mr. White: No.

"The Court: You refuse to produce the photostatic copy?

"Mr. White: Yes.

"The Court: Which you do have at your office?

"Mr. White: Yes.

"The Court: All right. Proceed."

The court then ordered a recess, and upon resumption of the hearing, the following appears of record:

"The Court: As I understand the law, while the court is in session, if the Judge orders an attorney to do something, if he had no right to order him to do it, the attorney should do it. Whether the order is good or bad, it must be obeyed. If the order was wrong and you produced the statement, then you would have the reversible error.

"You cannot stand in a courtroom in the presence of the jury during a trial and defy the Court. . . .

"For that reason, I find you guilty of direct contempt of court.

433

"Having known you, Mr. White, for about 30 years, we have been good friends, you were a gentleman throughout the trial. I have no complaints about your conduct, except you disobeyed the order of the Court to produce the statement when the Court felt that you should do it. I think we should have an expression on that by the Supreme Court."

The report of the proceedings, certified by the trial judge, discloses what actually occurred in open court upon the trial of the personal injury case in connection with the subject matter of the contempt order. This being a direct attack and not a collateral one upon the order, and there being a report of proceedings, the findings in the order, if in conflict with the report of proceedings, do not control. It is only where there is no report of proceedings that this court will not go behind the order but is bound to assume that the findings in the order are correct. Sharp v. Sharp, 333 Ill. 267, 274; In Re Cash, 383 Ill. 409, 429; Sundene v. Koppenhoefer, 343 Ill. App. 164, 169.

It is clear to us that the photostatic copy of the witness's statement, which the court ordered plaintiff in error to procure from his office and produce in court, could not be used by him in the examination of the witness to refresh his recollection, unless it appeared that the witness had exhausted his recollection upon the given subject matter. Only then would counsel be permitted to show the witness the statement and ask him, after reading it, whether it refreshes his recollection.

The cross-examination of this witness developed the fact that he saw the photostatic copy of his statement in plaintiff in error's office before he was called to the stand as a witness. He had not read it, but in discussing the statement he thought it refreshed his recollection with respect to the incident of the "motorcycle going through under the gate." However, on further

434

cross-examination, he definitely stated, "The minute they notified me I was to be a witness up here about what the accident was, then I remembered about the motorcycle going through under the gate. That was all." It was apparent from the witness's statement that there was no need for refreshing his recollection as to the circumstance of the motorcycle going under the gate.

█ Plaintiff in error not having exhibited or used the statement on the trial to refresh the witness's recollection, counsel was not entitled to demand of plaintiff in error the production of the statement. Having no right to demand it, the court had no right to direct plaintiff in error to go to his office, obtain the photostatic copy and produce it in open court. The trial judge's pronouncement that "whether the order is good or bad, it must be obeyed," is not an accurate statement of the rule of law.

No Illinois case is cited to us which sustains the power of the trial judge, while a case is on trial, to direct counsel to go to his office, obtain a copy of a statement and produce it upon the hearing, when it clearly appears there is no legal right to use it. The photostatic copy of the statement in question was procured in preparation for the trial. Such a document need not be produced when discovery is sought in advance of trial, because it is exempted by Rule 19—5, formerly Rule 17, of the Supreme Court [Ill. Rev. Stats. 1955, ch. 110, § 101.19—5; Jones Ill. Stats. Ann. 105.19—5], which provides:

"All matters which are privileged against disclosure upon the trial are privileged against disclosure through any discovery procedure. Disclosure of memoranda, reports or documents made by or for a party in preparation for trial or any privileged communications between any party or his agent and the attorney for the

435

party shall not be required through any discovery procedure."

Had the document in question been subpoenaed or sought under discovery proceedings, the above rule would bar an order for its production.

Directly in point is Hayes v. Chicago Transit Authority, 340 Ill. App. 375. There, the defendant obtained a statement from plaintiff as to the accident, in preparation for trial. Upon the motion of plaintiff and a hearing had, the court entered a formal order for the production of the statement. Upon refusal to comply with the order, defendant was fined $500 for contempt of court. In reversing the order, we there said the statement was obtained in preparation for future trial or proceedings involving the accident, and came within Rule 17 of the Supreme Court, exempting such a document from the right to discovery, production or inspection, and refusal to comply with the order did not constitute contempt.

To the same effect is Chapman v. Gulf, M. & O. R. Co., 337 Ill. App. 611, 622, where it was further held that where the purpose for the production of the document made in preparation for trial was to refresh a witness's recollection, did not justify any order for its production under the then Rule 17 of the Supreme Court.

It occurs to us that in principle it would be unjust and anomalous to hold defendant in the instant case was bound to obey the verbal order and be guilty of contempt for refusal to obey, when in the Hayes case there was a formal order entered of record for production of the document after a full hearing, and such a refusal to comply was held not to constitute contempt. We think the order in the instant case also violates the established rule of law as to privileged communication between attorney and client, represented by the document in question, where such privilege is not

waived. People v. Gerold, 265 Ill. 448, 481; Thorp v. Goewey, 85 Ill. 611; People v. Barker, 56 Ill. 299; Oliver v. McDowell, 100 Ill. App. 45.

■ Obviously, the verbal order of the court directed to plaintiff in error, to procure the document in question and produce it in court, was for the benefit of plaintiff in the main case. Had a formal order been entered to produce the document upon a discovery hearing or in response to a subpoena, such an order would be for the benefit of said plaintiff, and a refusal to comply, if it constituted contempt, would be civil contempt. People v. Gholson, 412 Ill. 294, 298. It was there said:

"A civil contempt ordinarily consists in failing to do something ordered to be done by a court in a civil action for the benefit of an opposing party therein."

■ ■ It is not a criminal contempt directed against the dignity or authority of the court. People v. Gholson, supra. The statement made by the court, already referred to, in addressing defendant, "You were a gentleman throughout the trial. I have no complaints about your conduct," establishes that there was nothing in the attitude or conduct of counsel calculated to embarrass, hinder or obstruct a court in the administration of justice.

In People v. Loughran, 2 Ill.2d 258, 263, dealing with the subject of contempt, the court said:

"The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is uni-

versally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution . . . ."

For the reasons indicated, the order appealed from is reversed.

Reversed.

KILEY, J., concurs.

LEWE, P. J., took no part.