**The People of the State of Illinois, Plaintiff-Appellee, v. Labe C. Pearson, Defendant-Appellant.**
**The People of the State of Illinois, Plaintiff-Appellee, v. Philip S. Aimen, Defendant-Appellant.**

Gen. Nos. 51,658, 51,659. (Consolidated.)

First District, Fourth Division.

August 14, 1968.

Philip S. Aimen, of Chicago, for Labe C. Pearson, and Robert Schey, of Chicago, for Philip S. Aimen, appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Arthur Zimmerman, and Allison W. Davidson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CRIMES CHARGED

Pearson was charged with the offense of perjury,[1] the complaint alleging that he had falsely stated his

---

[1] Ill Rev Stats (1965), c 38, § 32–2(a).

A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or

* See Callaghan's Illinois Digest, same topic and section number.

"legal address" on an application for certificate of title to a 1965 Pontiac automobile.

In ancillary proceedings, Aimen, attorney for Pearson, was cited for direct criminal contempt of court.

JUDGMENTS

After a bench trial, Pearson was found guilty and sentenced to six months in jail and to pay court costs of $100. Aimen was fined $200.

EVIDENCE AS TO PEARSON

*Edward B. Jones* and *John C. Kilcus*, for the State.

They were both corporals in the investigation department of the Secretary of State, and in that capacity were assigned by their Chief to investigate two addresses of defendant Pearson. The investigation culminated in the arrest of Pearson for violating section 4–103(d) of the Motor Vehicle Act.[2] The testimony of the two men was in substantial agreement.

Pearson had listed 1816 Darrow Avenue, Evanston as his "residence address" on a driver's license application and 51 Linden Avenue, Glencoe as his "legal address" on an application for a certificate of title to a 1965 Pontiac automobile. The investigation disclosed that Pearson resided at the Evanston address and was employed at the Glencoe address where, in the absence of the owner, he was manager of a Shell Oil Service Station.

In addition, Jones testified that he did not know what Pearson's state of mind was when he signed the applica-

---

affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true.

[2] Ill Rev Stats (1965), c 95½, § 4–103.

It shall be a violation of this chapter for a person who: . . . (d) With fraudulent intent uses a false or fictitious name or address, or makes a material false statement, or fails to disclose a security interest, or conceals any other material fact, in an application for a certificate of title, . . . .

tion for the certificate of title, and that it would not have made any difference had he known that defendant had been using the Service Station as his mailing address. Jones reported the results of his investigation to the Secretary's attorneys and they determined that Pearson had listed the Glencoe address "with fraudulent intent to hide his true place of residence." The warrant for defendant's arrest was issued prior to any conversation between defendant and the investigators.

*Labe C. Pearson,* defendant.

He had used the Shell Service Station as his mailing address in many business dealings over a period of some fifteen years. However, he did receive some mail at his place of residence. He would list his residence address or place of employment, depending on what information was requested. He always had used his Evanston residence address on driver's license applications for a period of ten years. In purchasing and obtaining a certificate of title in 1962 for a 1961 Chevrolet, he had used his business location as his "legal address," and no question had been raised. The same was true as to license plate applications.

He testified that he could read some things but not everything. He took a written examination for a driver's license and it had been issued to him. Whenever he had been asked by the Secretary of State or any governmental body for his place of residence, he had given his Evanston address.

He did not know exactly what "legal address" meant. He though it meant "where you get your mail."

*Exhibits*

Photographs depicting Pearson's Glencoe address as a Shell Service Station, and depicting a house at the Evanston address.

Pearson's driver's licenses, listing the Evanston address, and a driver's license application form indicating

that the person using the form should list his "residence address."

Pearson's application forms for a certificate of title and for a state license to a 1965 Pontiac automobile. Both forms showed the Glencoe address filled in at the blank marked, "legal address." Both forms bore defendant's signature and another signature over the line labeled, "notary public."

Pearson's bank statement and printed bank checks, and various business letters addressed to him, all bearing the Glencoe address.

Two retail installment contracts entered into by Pearson for the purchase in 1962 of a 1961 Chrevrolet automobile and for the purchase in 1966 of a 1965 Pontiac automobile. Each showed as Pearson's address the address of his place of employment.

OPINION AS TO PEARSON

■ Two questions based on elements of the crime of perjury are pertinent to the disposition of this case:

> (1) Did Pearson make a "false statement" in his application for certificate of title when he listed his place of business as his "legal address?"
>
> (2) When Pearson made such statement, did he not believe it to be true?

As to both of these elements it must be remembered that proof beyond a reasonable doubt is required to sustain a conviction.

■ Our conclusion is that the evidence is clearly insufficient to answer either question in the affirmative, and the conviction must therefore be reversed. As a matter of fact, it completely surpasses our understanding how, on this evidence, the Secretary of State could have initiated prosecution of the defendant for violation of the Motor Vehicle Act (footnote 2, above); how the State's Attorney could have elected to proceed with the case,

but on a perjury complaint (footnote 1, above); and, finally, how the court could have found defendant guilty of perjury.

The only semblance of a reason we can find for the whole proceeding is that the address given by Pearson on his automobile title application differed from that on his driver's license application. But if, in this regard, the Secretary of State had wanted consistent answers, he surely would have asked consistent questions. The information as to "residence address" on one form (furnished by the Secretary of State) was conceded to have been properly supplied by defendant. The other form (also furnished by the Secretary of State), called for "legal address," and this difference could reasonably have led one to believe that something other than "residence address" was being sought or the same terminology would have been used. Defendant testified that he didn't know exactly what "legal address" meant. Nor do we.[3] Webster's Third New International Dictionary defines "address" as: "the designation of a place (as a residence or place of business) where a person or organization may be found or communicated with." Thus it would appear that a "legal address" could be sensibly interpreted as either "a residence or place of business." Criminality may not be found when a layman attaches the ordinary dictionary meaning to words employed by a State official on forms issued for use by the public. In

---

[3] The trial judge felt he knew with certainty. At the close of the evidence, just before finding defendant guilty, he said:

From the evidence, it seems extremely clear that the defendant has not complied with the law. The matter of legal address, legal residence, legal anything, I am convinced, is a satisfactory one for everyone to know, that the State's Attorney [Secretary of State?] wants to know where you live. If you want to adopt the argument adduced by counsel, every sewer digger could give the address of the sewer that is his place of operation, every gas pumper could give where he pumps gas. In this particular case the man has a residence.

the complete absence of direct proof showing an intention to falsify, the insertion by defendant of his business address [4] (as he had previously done without question on other title and license applications) does not justify any inference of falsehood, but, rather, furnishes only a preposterous basis for perjury prosecution.

EVIDENCE AS TO AIMEN

At the conclusion of the Pearson trial, the court entered the following contempt order against Aimen, Pearson's attorney:

> Now in the name and by authority of the People of the State of Illinois, the Respondent, PHILIP S. AIMEN being present in his own proper person, the matter against said Respondent of alleged direct contempt of this Court is considered by the Court.

### AND THEREUPON THE COURT FINDS AS FOLLOWS:

> 1. That on February 15, 1966 in the Circuit Court of Cook County, Third Municipal District, Niles Branch in the case of the People vs. Labe C. Pearson, Complaint No. 66 MC3–53918, Perjury, came on to be heard in the regular course before the Court.
>
> 2. That during the course of said case the Respondent, PHILIP S. AIMEN appeared as counsel for defendant, Labe C. Pearson.

---

[4] This had been his customary mailing address for fifteen years, and one at which he could readily have been located by the Secretary of State—as, indeed, he was.

Defendant argues in his brief that there must be hundreds of thousands of automobile titles which show an address other than that of the owner's residence. While this may well be true, there is no evidence in the record to support such a statement and we place no reliance thereon.

3. That during the course of said case, Respondent stated that the prejudice of the Court was apparent. Thereupon, the Court interrupted proceedings to inform Respondent that he was contemptuous of the Court and that the Court would consider this matter after the conclusion of the case on trial.

4. That during the hearing of the case the Respondent ignored the Court's instructions in that he repeatedly asked questions to which the Court had previously sustained objections; whereupon, Respondent would again argue with the Court. Thereafter, when another ruling was made on the same question, Respondent would continue arguing with the ruling of the Court, during which Respondent repeatedly interrupted the Court and opposing Counsel. Respondent also made unfounded remarks castigating opposing Counsel.

5. That the conduct of the Respondent, PHILIP S. AIMEN, which conduct of said Respondent took place while this Court was in open session, tended to impede and interrupt the proceedings and lessen the dignity of this Court; and further tended to embarrass and obstruct the Court in the administration of justice, bringing the administration of the law into disrespect and disregard.

THE COURT FURTHER FINDS that Respondent who is now and here present in Open Court is, by reason of said contempt of said Respondent guilty of direct contempt of this Court in open Court.

IT IS THEREFORE ORDERED, CONSIDERED AND ADJUDGED, that Respondent, PHILIP S. AIMEN because of said contempt as aforesaid, be and he is hereby fined $200.00 (Two Hundred Dollars).

■ In determining the correctness of this order we shall, as urged by the State, consider the record presented for review as well as the order itself. In re

Dunagan, 80 Ill App2d 117, 123, 225 NE2d 119, and cases there cited.

The charges against Aimen, as set forth in the above order, are to be found only in paragraphs 3 and 4. Paragraph 4 is lacking in specific allegations of fact and, in a thorough search of the record, we have been unable to find anything of a contemptuous character to support the accusations contained in this paragraph. Our attention will therefore be directed to paragraph 3 exclusively.

■ The charge that during the trial Aimen had "stated that the prejudice of the Court was apparent" is supported in the record by his comment to the judge: "I think your bias is showing." This is not a proper statement for him to have made, and he should be ashamed of having made it, but we do not consider it an adequate basis for a contempt conviction. We do not mean to be holding that provocation by the court may, in itself, be a defense to a contempt action, nor that contemptuous conduct directed at a court's rulings is excusable merely because the court may have been in error. Nevertheless, we do believe that these factors may be taken into account in ascertaining the state of mind of an alleged contemnor. As noted in People v. Rongetti, 344 Ill 107, 119, 176 NE 292, it was "apparent that the attitude of the trial court toward plaintiff in error all through the Rongetti trial and the proceedings for contempt against him was one of hostility. . . . plaintiff in error was given considerable provocation by the court by his actions and rulings and stinging remarks . . . ."

From the outset of the instant case, counsel for the defendant was presented with one surprising situation after another, culminating in the conviction which we now set aside, and for which the State's Attorney recommended as penalty a fine of $1,000 and a year in jail. Commencing with the first witness, the court shut off Aimen's questions (which we consider to have been proper

ones) characterizing them as "ridiculous"; general objections of the State's Attorney (in the form of "I object") were frequently and consistently sustained without any specification of grounds even when requested by Aimen;[5] on occasions, the court foreclosed answers to Aimen's questioning without there having been any objection by the State's Attorney. The general atmosphere of the trial was so strained and heated that at one point the court said to Aimen, "I don't want you to have a heart attack."

Under all the circumstances, and especially in light of the difficulties Aimen encountered in seeking to defend his client, we feel that his conduct throughout the trial, while not exemplary, was not shown to have been more than a lawyer's strenuous and persistent presentation of his client's case, and we therefore cannot bring ourselves to affirm the contempt conviction. See In re McConnell, 370 US 230, 236. Furthermore, we do not consider his comment about bias, made in the heat of battle, to have been *"calculated* to embarrass, hinder or obstruct a court in the administration of justice." (Emphasis supplied.) People v. White, 8 Ill App2d 428, 437, 131 NE2d 803; People v. Gholson, 412 Ill 294, 298, 106 NE2d 333.

DECISION

The convictions of both Pearson and Aimen are reversed.

Reversed.

McCORMICK, P. J. and DRUCKER, J., concur.

---

[5] As a typical example, one of the court's responses was, "Some day we can sit down and I will explain, but we are not going to take all these people's time."