THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH A. MILLER *et al.,* Defendants.—(WILLIAM A. CAIN, Attorney At Law, Appellant.)

(No. 70-13; ▮)

Second District—December 3, 1970.

SEIDENFELD, J., dissenting.

William A. Cain, *pro se*; Thomas P. Cernek, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The appellant, William A. Cain, an attorney at law, was adjudged guilty of direct contempt of court. A fine of $50.00 was ordered to be paid; upon failure to do so, he was to be incarcerated. The appellant paid the $50.00 fine and appeals.

On appeal, he claims that the order is void on its face and that a fair appraisal of his conduct would not justify the direct contempt order.

The appellant represented Kenneth Miller and Rosemarie, his wife, for offenses arising out of a traffic violation. Kenneth Miller was charged with improper lane usage, refusal to display his drivers license and resisting arrest. Rosemarie Miller was charged with disorderly conduct, resisting arrest and aggravated assault.

On the day of trial, prior to the selection of a jury and while in chambers, the defendant submitted a list of 26 persons whom he expected to call as character witnesses. The court advised him that only a reasonable number of character witnesses, "a half-dozen", would be allowed to testify. At this point, the transcript discloses the following:

"THE COURT: * * * The introduction of such a volume of witnesses, whose testimony obviously is going to be cumulative for the simple purpose of attempting to wear down everybody by the repetitious testimony of 26 people, will not be permitted by the Court, either on behalf of the State or on behalf of the defense.

Mr. CAIN: This is not available to the State, a character witness.

THE COURT: I am talking about cumulative testimony.

Mr. CAIN: I see. Well, then, Judge, I don't know how to proceed. I do not want to be held in contempt of Court, as your Honor told me." The record discloses no previous reference relative to the defendant being held in contempt of court.

Later in the same conference, a discussion ensued pertaining to the questions to be asked on *voir dire.* The court instructed the defendant that it would not permit unlimited questioning of the jurors or questions relating to the law of the case. The following discourse occurred:

"THE COURT: * * * You don't go into the burden of proof and educate them (jurors) as to the law. That is my prerogative.

Mr. CAIN: Can't you do that in your opening interrogation and say if they have served on a civil jury, the proof is required by a preponderance of the evidence?

THE COURT: The Court will instruct them as to that at the proper time.

Mr. CAIN: You see, that is my problem. I would like to ask some of these questions. I don't want to be held in contempt, Judge.

THE COURT: What questions?

Mr. CAIN: Have they ever served—

THE COURT: I just told you. You can ask them if they served on any jury prior to today, what kind; criminal or civil. Do they understand there is a difference in the quantum of proof that is required, and the

Court will instruct them at the proper time. We hope they will pay attention until the end of the case before they make up their minds.

Mr. CAIN: But their minds might be influenced by the greater weight rule of the civil court while they are sitting and listening to the witnesses. Once it is fixed in their minds, you won't dislodge it in argument at the end.

THE COURT: That argument has no validity whatsoever.

Mr. CAIN: I just want it straight in the record.

THE COURT: That is the purpose in laying out the ground rules.

Mr. CAIN: I am going to be perfectly candid. Frankly, as I told you off the record before you frightened me where you mentioned possible contempt—

THE COURT: I want everybody to behave themselves and conduct themselves properly and we will have no problem."

After a noon recess, the defendant moved for a change of venue. This was denied. As *voir dire* was about to commence, the defendant requested a hearing without the presence of the jury and on oral motion, challenged the entire venire because no negroes were included. This dialog took place:

"THE COURT: Counsel, the Court strenuously objects to the implication that you have cast upon the administration of the court system, the jury commission and the entire County of DuPage. Let me advise you that I expect you to adhere with every stage of the trial strictly to the law. This jury has been called in accordance with the law. The jury is proper. Your objection is overruled, and I want it understood for the record that I want you to proceed in a proper fashion at all times. Do I make myself clear?

Mr. CAIN: Your Honor, I will not be intimidated by the threat of contempt. I have never been held in contempt of 22 years of practice.

THE COURT: There is always a first time.

Mr. CAIN: Will the Court state whether or not there is a Negro present in that venire?

THE COURT: There is a proper array. If you know how to object to the array, fine. Do so. If you don't, may we proceed?

Mr. CAIN: I am objecting on the grounds there is no Negro present in that venire.

THE COURT: Your objection is overruled."

While interrogating prospective jurors, the defendant asked a panel of four the following:

"Mr. CAIN: * * * Mrs. Petrik, if—God forbid—you were on trial here and I was selecting a juror and that juror had the same state of

mind as you have now, as far as being fair and impartial, would you tell me to select that juror?

\* \* \*

Mr. NORGLE: Your Honor, I would like to raise an objection to the dramatic affect that counsel is trying to cause here by using expressions like God forbid if you were on trial.

THE COURT: The objection is sustained.

Mr. CAIN: I will agree to strike God."

The court did not interrupt the defendant during *voir dire*.

The defendant, admittedly, misquoted a portion of the State's opening statement and, upon objection, a hearing was had outside the presence of the jury. The defendant and the court engaged in a debate as to what may or may not be included in opening statements. Then this colloquy took place:

"THE COURT: \* \* \* As I indicated to both of you gentlemen, I want this matter tried properly and a proper trial does not mean to give the jury a blow by blow description of what is going to be brought out in the way of evidence. It is to be done in a rather broad form so they merely understand what the entire situation is about; so that they can put in proper context the evidence as it is brought out when the witnesses testify.

Mr. CAIN: There is a charge here of resisting arrest. I think it perfectly competent to show not only was there resisting but a guy was pulled out of a car. The cop pulled the guy out of a car. I can't tell the jury that? Mr. Norgle told them that.

Mr. NORGLE: The basis for my objection was for not simply that statement. You were misquoting me.

Mr. CAIN: Do you know, it seems the only thief you have in DuPage County is a defense lawyer that is trying a criminal case. I have been accused of everything under the sun.

THE COURT: Don't make those statements. You are an attorney, licensed by the State of Illinois.

Mr. CAIN: Yes.

THE COURT: You have a right to go into any jurisdiction in this State and try a case. The only thing that I am requiring is that you do it right.

Mr. CAIN: In your opinion.

THE COURT: No, no; the Supreme Court.

Mr. CAIN: You didn't show me in those decisions, your Honor. I would appreciate a criminal case—

THE COURT: It doesn't have to be a criminal case.

Mr. CAIN: I would appreciate a case not from 1910.

THE COURT: Apparently all the other lawyers seem to understand the situation.

Mr. CAIN: You have made remarks about my intelligence before, Judge. I just—

THE COURT: I am not responsible for your knowledge or lack of knowledge. It is the law. That is not my concern under any circumstance.

Mr. CAIN: I am going to proceed—

THE COURT: I have a right to assume when you come into this courtroom as a lawyer that you know you are a lawyer and you know how to handle the matter. It is not up to me to evaluate your legal talent. That was for the Bar examiners and the Supreme Court. I am not interested in that aspect of it. I am interested in a trial which is proper so that the jurors are not either confused or bulldozed or conned. I want them to get the facts from the witnesses.

Mr. CAIN: You are saying an officer of this Court might bulldoze or con the jury?

THE COURT: I am making a statement and if you will allow me to continue. I want the matter to be received by the jury in proper fashion so that they can, as 12 citizens, retire to that jury room and arrive at what they feel is a proper verdict, based on the facts.

Mr. CAIN: All I can tell you, Judge, is you are the Judge. I will go out there and make my opening statement. If there are objections and they are sustained, I will have to go on accordingly. If there is reversible error, that is your baby, not mine.

THE COURT: That doesn't impress me in the least. We have the Supreme Court and the Appellate Court for just that purpose, and I am sure that they are capable of making that determination when and if it becomes their function.

Mr. CAIN: I just want—

THE COURT: The threat of an appeal holds no terror for me, counsel and has never held any terror, believe me.

Mr. CAIN: I don't mean to frighten you.

THE COURT: You can't.

Mr. CAIN: But you do want the record to be clear that I expect to tell this jury what my evidence will show. If you don't allow me—

THE COURT: Not item by item.

Mr. CAIN: All right. You stop me and that is it.

THE COURT: Put the witnesses on.

Mr. CAIN: I am not going to get another angina attack because I want to—* * *."

Defendant then concluded his opening statement without interruption

and the State called its first witness, a police officer. During cross-examination of this witness, and in the presence of the jury, the State made an objection and the following took place:

"Mr. Norgle: Your Honor, this question has been asked several times and answered by the defendant. He has testified several times—

Mr. Cain: He is not the defendant.

Mr. Norgle: My apologies.

Mr. Cain: I select whom I represent.

The Court: Counsel, your gratuitous remarks will be stricken from the record, and you are admonished not to commit that act again. Proceed, Mr. State's Attorney, with your objection.

\* \* \*

Mr. Cain: \* \* \* Your Honor, may I ask leave and counsel, please, to have a photostatic copy of this marked as an exhibit and offered into evidence? I will offer it eventually instead of the original for purposes of interrogating this witness and to go to the jury room.

The Court: Any objection?

Mr. Norgle: Why don't we admit the original?

Mr. Cain: I don't want him to get stopped by Officer Ohlman on the way home tonight.

The Court: Counsel.

Mr. Cain: Or any officer.

The Court: The gratuitous remarks you are making of the police officer will be stricken from the record and again you are admonished not to commit that act again.

Mr. Cain: I respectfully ask for a mistrial and for the Court to withdraw a juror and declare a mistrial, your Honor; most respectfully, your Honor. Most respectfully.

The Court: Do you have any objection, counsel, to the introduction of the driver's license?

Mr. Norgle: I believe the original—

The Court: And a substitution thereof, a photostatic copy?

Mr. Norgle: No objection.

The Court: Proceed. Your motion for a mistrial is obviously denied. Proceed."

Cross-examination continued and while the appellant was interrogating the witness as to the manner in which he assisted Rosemarie Miller into the squad car, the transcript discloses the following:

"Q. Where were her hands placed?

A. Behind her back.

Q. And I think you told us you assisted her into the squad car; is that right?

A. That is correct.

Q. How did you assist her?

A. I pushed her down on the seat.

Q. You pushed her down on the seat with her hands behind her; right?

A. No.

Q. I'm sorry.

A. I placed my hands on her shoulder and down on the seat.

Q. You turned her around so her rear end was facing into the car?

A. Yes.

Q. And you pushed her down?

A. No. I pushed her in a downward position.

Q. You pushed her very gently. Is that what you are trying to tell us?

THE COURT: Counsel, refrain from rephrasing the answers.

Mr. CAIN: I will take an objection to that, most respectfully, your Honor and ask that a juror be withdrawn and ask for a mistrial.

THE COURT: So be it. Will the last juror step down? Ladies and gentlemen, you are dismissed. The Court declares a mistrial. Madam Reporter, you will write up the transcript. Counsel will approach the bench.  *  *  *."

The Court then dictated the following order to the court reporter:

"In this cause which we proceeded to try by selection of a jury at approximately 2:45 this afternoon, the jury having been ultimately selected, the matter proceeding to trial, the State having placed one witness on the stand, counsel for the defendant, by grimaces, in the presence of the jury, by further act, to-wit:

Gratuitous comments which had a tendency to reflect upon the entire proceedings of this Court, both as to the testimony of the witnesses and the ruling of the Court, which items may be found in the record of the transcript herein, each of which has a tendency to cast an improper reflection upon the integrity of the State's Attorney and the Court, it is the order of this Court that the attorney for the defendant is herein found to be guilty of contempt and for such contumacious conduct, it is the order of this Court that counsel for the defendant, William Cain, shall pay a fine of $50.00 or be incarcerated in the County Jail of DuPage County until such fine is paid."

The transcript next discloses the following:

"Mr. CAIN: Your Honor, may I be heard? If I was grimacing, I am unaware of it.

THE COURT: I certainly am, because I was sitting here looking at you constantly."

■■ The appellant, citing *The People v. Hassakis* (1955), 6 Ill.2d 463, argues that the order is void on its face because it contained only conclusions of the judge and not the facts out of which the contempt arose. This argument would have substance if all we had before us was the order (which was the fact in *The People v. Hassakis, supra,* page 465). However, in the case at bar, we have the transcript of proceedings, referred to in the order, which may be taken into consideration. *People v. Pearson* (1968), 98 Ill.App.2d 203, 210-211.

■■ It is further argued that the order should have provided for a fine or a definite term in jail for non-payment. The case cited by appellant on this point, and its forerunner, are not authority for this proposition. Where a court imposes a fine and orders incarceration for non-payment of the same, the fine is satisfied at the rate of $5.00 per day of imprisonment. (Ill. Rev. Stat. 1967, ch. 38, par. 1—7(k).) We conclude that the order was not void on its face.

We have studied the transcript of proceedings; nowhere do we find mention, prior to the court's adjudication, that the appellant was distorting his face (grimacing) as referred to in the order. Consequently, this portion of the order cannot stand. The remaining question is whether the balance of the acts of the defendant were sufficient to constitute contempt of court.

To fulfill its basic purpose of administering equal justice to all, the primary concern of the court must be the discovery of where the truth lies. To reach this goal, and thereby insure a fair trial to all litigants, ancillary matters or disruptive practices must give way to an atmosphere of dignity, decorum and courtesy on the part of all parties involved. Toward this end, standards of conduct and emotional restraint are essential.

■■ A lawyer is obliged to represent his client diligently, courageously and vigorously, with all of the skill and knowledge he possesses. In doing so, however, he must remain within the bounds of proper conduct, even in light of any shortcomings on the part of the judge. This is balanced by the obligation of a judge to recognize the duty of an attorney to his client, to treat an attorney respectfully and courteously, to avoid any personal involvement and to preside in an impartial but firm manner regardless of any shortcomings on the part of the attorney.

In the instant case, there developed at the outset, a conflict of personalities between the appellant and the court. The differences arose in chambers (we do not mean to imply that conduct in chambers is to be treated differently than conduct in open court) and dealt with the court's rulings on the procedure and the law to be applied to the case on trial.

646

It is sufficient to here summarize the in-chambers conduct of both the court and counsel as injudicious.

■■■ While provocation by the court is not a defense to a contempt action, nevertheless, it may be taken into consideration as a factor by the reviewing court in reaching its decision. *People v. Pearson, supra,* 211.

Had the appellant's objectionable conduct been limited to just those matters which occurred in chambers, we would be more inclined to give weight to his argument that statements uttered on the spur of the moment, at the heat of trial, should not be construed as being made with intent to be disrespectful of the court or its administration of the law. As the record discloses, however, without provocation on the part of the judge, appellant continued his attitude in open court and in the presence of the jury. His gratuitous and unnecessary remarks left the court with no alternative but to strike them from the record and admonish the appellant.

While ordinarily a motion for a mistrial arises when an alleged error is made by the opposing party, this was not so in the instant case. Here it was the appellant, by his conduct, who necessitated the court's action. We do not feel that the gratuitous remarks can be viewed as having been made on the spur of the moment or during the heat of trial or argument (as might have been considered the case in what transpired in chambers).

The appellant argues that the allowance of the mistrial was due to the court's admonishment which in itself constituted prejudicial error. On the contrary, the admonishment was proper and the interruption of the trial was prompted by the gratuitous remarks of the appellant. On several occasions, both in chambers and in open court, the appellant requested a mistrial. This was finally accomplished, not by any act on the part of the State or court, but by the acts of the appellant.

It is hard for this court to see how the trial could have proceeded under the circumstances of this case. The basic disruption was the continued attitude of the appellant.

We have read the cases cited by the appellant but find them not to be applicable under the circumstances of the case at bar.

In the recent case of *In re Estate of Melody* (1969), 42 Ill.2d 451, 452, the court said:

"Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute."

██ We are of the opinion that because of the conduct of the appellant the court was hindered and obstructed in continuing the case before it. Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

DAVIS, P. J., concurs.

Mr. JUSTICE SEIDENFELD, dissenting:

I respectfully dissent. A review of the record does not justify the conclusion that the court was hindered and obstructed in continuing the case before it by the conduct of the respondent attorney.

The principles set forth in *In re McConnell* (1962), 8 L.Ed.2d 434, appear to me to be applicable. The court states, at pages 438, 439

"The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. The petitioner created no such obstacle here.

While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice."

The Illinois Appellate Court in *People v. Pearson* (1968), 98 Ill.App.2d 203 followed *In re McConnell* and reversed a contempt judgment against an attorney who said to the judge during the trial, "I think your bias is showing". The court on review considered that this was not a proper statement, that the attorney should have been ashamed to have made it, but that it was not an adequate basis for a contempt conviction, concluding (at page 212):

"Under all the circumstances, and especially in light of the difficulties Aimen encountered in seeking to defend his client, we feel that his conduct throughout the trial, while not exemplary, was not shown to have been more than a lawyer's strenuous and persistent presentation of his client's case, and we therefore cannot bring ourselves to affirm the contempt conviction. See *In re McConnell*, 370 US 230, 236. Furthermore, we do not consider his comment about bias, made in the heat of battle, to have been *'calculated to embarrass, hinder or obstruct a court in the administration of justice.'* (Emphasis supplied.) *People v. White*, 8 Ill.App.2d 428, 437, 131 NE2d 803;

*People v. Gholson,* 412 Ill. 294, 298, 106 NE2d 333."

In *People v. Loughran* (1954), 2 Ill.2d 258, 265, our Supreme Court considered that repeated admonitions by the trial judge to the defense attorney to confine himself to the evidence, did not indicate that the court was embarrassed in his duties in any way but indicated rather that the court "was in complete command of the situation".

So here, nothing in the record indicated to me that the court was unable to conduct orderly and fair proceedings because of counsel's conduct.

The climate of the trial was established in the preliminary discussions in chambers. At the very first the court showed its pique at the effort of counsel to subpoena police records concerning the arresting officer. The defendant was not entitled to the records but in denying the motion the court characterized counsel as "out of line" and said, "I don't know where you get the idea you can look at confidential police records. Not in my court room", and prevented any explanation of counsel's position on the question.

The further discussions in chambers are set forth in part in the majority opinion, but no claim is anywhere made that counsel was considered to be contemptuous in these colloquies. The court's references to "conning" the jury and his lack of responsibility for counsel's "knowledge or lack of knowledge", were provocatory, but nothing said by counsel in chambers is suggested as the alleged contemptuous conduct found by the court. The clear indication is in the record, however, that the court strongly disapproved of the manner in which counsel was trying his case.

Although counsel correctly objected to a misstatement by the prosecutor that a question had been previously answered by the defendant, it was wrong for him to then state "I select whom I represent". It was wrong for counsel to suggest that he would not agree to the placing of the original driver's license in evidence because he didn't want his client "to be stopped by Officer Ohlman on the way home". But we do not believe that this non-exemplary conduct constituted conduct to be punished by contempt, particularly when the court found "obviously" no ground for a mistrial to that point.

The so-called "gratuitous remarks" which finally resulted in the court declaring a mistrial consisted solely of the objection made by counsel to the court's (with no previous objection by opposing counsel) admonishing him in the presence of the jury to "refrain from rephrasing the answers". Even if the court was within its discretion in its interjection, it was also within the right of counsel to preserve what he considered to be prejudicial by a motion for a mistrial.

The court, in my opinion, did not, by counsel's conduct, ever lose control of the trial as predicated in the majority opinion.

I would reverse the judgment of contempt on this record.