The People of the State of Illinois, Plaintiff-Appellee, v. Buck Buster, Defendant, and James D. Reynolds, Respondent-Appellant.

Gen. No. 65–1.

Third District.

December 7, 1966.

ABRAHAMSON, J., dissenting.

James D. Reynolds, pro se, of Peoria, appellant.

Channing L. Pratt, State's Attorney, of Monmouth, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The respondent, James D. Reynolds, was cited to appear and show cause why he should not be held in contempt of the Circuit Court of Warren County for his failure to

appear as the attorney of record at two trial settings of the case entitled The People of the State of Illinois v. Buck Buster. An answer was filed to the citation by the respondent, and after a full hearing the court entered an order finding him guilty of criminal contempt and imposing a fine against him in the sum of $50. Respondent appealed from this order to the Third District Appellate Court, which transferred the case to this court for opinion.

The facts are not without some dispute, but there was evidence before the court—including the testimony of the judge who ordered the issuance of the citation, the State's Attorney who prosecuted the criminal case, the respondent and his secretary—sufficient for the court to find the following: That on May 17, 1963, an Information was filed charging Buck Buster, herein called the defendant, with driving a motor vehicle while under the influence of intoxicating liquor; that the defendant was arraigned on June 27, 1963, entered a plea of not guilty and demanded a jury trial; that the defendant, at the time, advised the court that he was represented by the respondent; that the court noted this on the docket as a courtesy; that the respondent, however, was not in court; and that prior to this, on May 20, 1963, he had written to the State's Attorney advising him that he represented Buck Buster.

Thereafter, respondent had several conversations with the State's Attorney regarding the possibility of reducing the charge against his client. On October 18, 1963, the cause was set for trial on November 12. Notice of trial date was given to respondent by mailing to him a copy of the trial calendar, on which he was shown as attorney for defendant. On November 4, 1963, the State's Attorney and the respondent had a telephone conversation in which the former told the latter that the case would probably come up for trial the week following the 12th

of November and that he would let the respondent know the exact date.

On November 6, 1963, the respondent wrote a letter to the State's Attorney in which he confirmed the telephone conversation and advised that he would be ready for trial upon reasonable notice. He further asked to be advised of the status of the calendar as soon as possible, and stated that he had tentatively marked such trial date on his own calendar for November 19 at 10:00 a. m.

On November 8 and 11, the State's Attorney again talked to the respondent's office, the last call being at the request of the judge, to advise the respondent that the matter was definitely set for November 19. However, on November 18, the matter was taken off the jury calendar and continued until the next jury setting.

During this period of time, three continuances were shown on the docket sheet, all as having been granted on the motion of the defendant. It is undisputed, however, that the respondent at no time personally appeared before the court and did not file any written pleadings seeking a continuance. The judge testified that on one occasion he received a telephone call from the respondent's office advising the court that the respondent could not be in court on a certain date; and that on at least one of the other continuances, the State's Attorney advised the court that the respondent could not be in court at the time the matter was set.

The case was then set as the first case on May 4, 1964, and notice thereof was sent to respondent by the court on April 17, 1964. In the interim, the State's Attorney and the respondent had discussions regarding the amount of the possible fine if the defendant were to plead guilty. The respondent testified that on April 30, 1964, he agreed with the State's Attorney that the defendant would plead guilty to the charge if the State would recommend a

maximum fine of $300 with payment to be made within 120 days.

On May 4, the day set for trial, the defendant ostensibly appeared to plead guilty to the charge. The respondent was not with him. In the meantime, the State's Attorney had received a record of the defendant's past offenses. In view of this record, the State's Attorney was of the opinion that the court would probably levy a fine in excess of $300—which was more or less customary for a first drunken driving offense—and he so advised the defendant and telephoned the respondent at the same time. The respondent then talked to the defendant, the State's Attorney and the judge on the telephone. In this conversation the judge refused to make any commitment relative to a maximum fine. As a result, the defendant did not plead guilty; and the judge advised the respondent that the State's Attorney would contact him later that day regarding a definite trial date in the immediate future. In this telephone conversation, the respondent asked the defendant to come over to his office immediately to prepare for the trial and pay the necessary trial fee.

Late in the afternoon on May 4, the State's Attorney called the respondent indicating that the case might be tried on May 6. On May 5, the State's Attorney again called the respondent's office at 10:00 a. m., and advised the respondent's secretary that the case would go to trial at 10:00 a. m. sharp, the following morning. This call was made at the request of the judge.

Twenty-eight jurors reported on May 6 and the State was ready to proceed at 10:00 a. m. Neither the respondent nor the defendant appeared at this time. However, the defendant appeared—alone—at 11:00 a. m. In the meantime, the State's Attorney had called the respondent's office and was told by his secretary that the defendant had not been able to produce the necessary trial fee and that the defendant would be in court alone. Thereafter, the court ordered the citation to issue for the

respondent to show cause why he should not be held in contempt for his failure to appear at the May 4 and May 6 jury trial settings.

This proceeding does not question the propriety of the respondent's representation of his client insofar as the attorney-client relationship is concerned. The respondent first sought to have the charge against the defendant reduced and he devoted substantial efforts toward this end. He then sought assurance of the State's Attorney and the court that the fine to be imposed would be no greater than $300. Again, he was unsuccessful—but through no lack of endeavor on his part. When it became apparent that all of his exertions were to no avail and that trial could no longer be delayed or avoided, the respondent made preparations on behalf of his client to be ready for trial. It is conceded by all parties that the respondent did not appear before the court because his client did not advance the trial fee.

The issue before this court concerns the relationship of the respondent to the court before which the defendant's case was pending—the relationship of the respondent to the court, as an attorney and as an officer of the court. The respondent contends that since he did not file any written appearance or any written pleading in the case, he was not the attorney of record and was not obliged to appear before the court at the time the matter was set for trial.

■■■ Under the factual circumstance outlined above, we deem it immaterial that the respondent filed no written entry of appearance or written pleading. His course of conduct for a period of approximately one year is totally inconsistent with his present assertion that he was not representing his client before the court. The respondent, without reservation, advised the State's Attorney that he represented the defendant in the case in question. Thereafter, the defendant stated in open court that the respondent was his attorney. The respondent was from a

city other than where the arraignment took place, and the court, as a matter of courtesy, entered respondent's appearance of record. As we view the matter, such act of courtesy in itself imposed no duty on the respondent to appear before the court or to answer its commands or directives with respect to this case.

Subsequently, however, the court gave notice to the respondent of the trial setting of this case in the fall of 1963. The notice indicated that the respondent was the attorney of record for the defendant in the case pending before the court. The respondent made no objection to this representation, but rather adopted a course of conduct which reaffirmed to the court that he was the attorney for the defendant. After receiving the notice of trial, the respondent did not deny his representation of the defendant, but rather indicated that he would be ready for trial on reasonable notice; and that he could not attend the trial on a certain date. The court was advised by someone from respondent's office that he could not attend the trial on another date.

Again in the spring of 1964, notice of trial was sent to the respondent by the court indicating that he was the attorney for the defendant in this case. Again, the respondent did nothing to disclaim such representation, and he continued to represent the defendant in his negotiations with the State's Attorney. When he failed to appear before the court on May 4—at a time when the matter was set for trial—he talked to the court, the State's Attorney and the defendant, and in these conversations the respondent again represented to the court that he was the attorney for the defendant. He sought from the court information as to whether a specific fine could be expected, and when the court refused to give an assurance that the fine would not exceed $300, the respondent told the court he would prepare for trial and asked that the defendant be sent to his office to make financial arrangements.

Such conduct by the respondent was consistent only with complete representation of his client in the matter pending before the court. It appears to us that the court did many things as a matter of convenience and courtesy to the respondent. Absent these, the respondent might have had to file a written appearance or written pleadings in this case. The mere fact that such courtesies were extended to the respondent did not lessen his responsibilities or the duties imposed upon him by reason of his representation of the defendant. The course of conduct adopted by the respondent may be equated to his filing an appearance on behalf of the defendant.

 One of the primary duties of an attorney is that owed to the court. He is an officer of the court and owes to the court a duty to be obedient to its rules and orders. When engaged in litigation, he owes a duty to the court to appear before it upon notice and to assist the court in the expeditious consideration and disposal of pending cases.

██ Canon 21 of the Professional Ethics of the Illinois State Bar Association and of the American Bar Association impose upon the lawyer the duty "not only to his client, but also to the Courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes." While such canons do not have the force and effect of judicial decision or statutory law, they nevertheless are of interest to this court, provide guidelines to members of the profession and are helpful in reaching determinations in particular cases. Illinois State Bar Ass'n v. United Mine Workers of America, Dist. 12, 35 Ill2d 112, 119, 219 NE2d 503 (1966).

The respondent's conduct violated the duty owed by him to the court to be respectful of and obedient to its orders and to assist the court in the disposition of the matters pending before it. On May 4, the respondent did not see fit to appear at the time set by the court for the trial of the defendant's case. While he may have assumed

that upon his advice his client was going to change his plea, he owed to the court the duty to make an effort to see that this case was disposed of promptly and in an orderly fashion.

It seems that at all times the convenience of the respondent was his sole consideration, and that he made no effort to assist the court. Had the respondent appeared at the setting on May 4, as he had a duty to do, it may well be that twenty-eight jurors would not then have had to appear for naught on May 6.

Likewise, on May 6, the respondent again should have fulfilled his duty of punctual attendance to the court, and should not have compelled the court to seek both him and his client to ascertain whether the jury should be retained.

The respondent by his course of conduct was the attorney for and the representative of the defendant in the then pending case before the court. Under Circuit Court Rule 1.4(b) and (c), he was not free to withdraw from this capacity without leave of court. (Ill Rev Stats 1963, c 110, par 301.4(b), (c).) Said Rule provides:

"(b) Notice of withdrawal—An attorney may not withdraw his appearance for a party without leave of court nor unless he has given reasonable notice of the time and place of the presentation of the motion for leave to withdraw by personal service or by registered or certified mail, directed to the party represented by him at his last known business or residence address.

"(c) Motion to withdraw—The motion for leave to withdraw shall be in writing and, unless another attorney is substituted, shall state the last known address of the party represented. The motion may be denied by the court if the granting of it would delay the trial of the case."

██ ██

██ ██ Until such time as the respondent complied with the above Rule, he owed to the court the duty to appear when commanded. He was not free to appear or fail to appear at his pleasure. While it would have inconvenienced him to appear before the court and to advise the court of the inability of his client to raise the necessary trial fee, such fact did not justify his decision to ignore the court and to cause the resulting incommodity to the court and to the jurors present. The respondent, as the attorney for the defendant and as an officer of the court, was under a duty to observe the commands of the court and to discharge his obligations to it in a manner conducive to the prompt administration of justice and consistent with the maintenance of the respect and confidence of the public in our judicial system.

██ Contempt has been defined "as any act which is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity." The People v. Gholson, 412 Ill 294, 298, 106 NE2d 333 (1952). Also see: The People v. Howarth, 415 Ill 499, 508, 114 NE2d 785 (1953); and The People v. McDonald, 314 Ill 548, 551, 552, 145 NE 636 (1924).

██ The parties litigant here admit that the nature of the contempt charged and found was criminal contempt. Consequently, we are concerned only with whether on the record before it, the trial court was warranted in finding the respondent guilty of such contempt. We hold that the trial court was warranted in so finding.

Respondent has cited cases and texts which deal with the question of the scope of employment of an attorney by a client. These citations are concerned with the question of authority of an attorney—actual or implied—as it relates to the power of the attorney to bind his client in dealings with third parties. We are not here concerned with this power. The issue before this court is the duty

of respondent to the court as determined by his course of conduct, irrespective of his scope of employment as between himself, as attorney, and his client.

We feel compelled to add one additional observation applicable to both the respondent-appellant and the plaintiff-appellee. Appellate Court Rule 7, IV (Ill Rev Stats 1963, c 110, par 201.7, IV), provides that a point made in the Points and Authorities of a Brief, but not argued in the Argument portion thereof, may be considered waived. We find it difficult to determine in either of the Briefs filed herein, which of the Points and Authorities, if any, were in fact argued.

By virtue of the decision herein, we deem it unnecessary to pass upon the appellee's motion to dismiss the appeal; and the order of the trial court finding the respondent guilty of contempt, is affirmed.

Order affirmed.

MORAN, P. J., concurs.

ABRAHAMSON, J., dissents.