In the Matter of Clarence M. Dunagan, Contemnor-Appellant.

Gen. No. 50,320.

First District, Fourth Division.

February 17, 1967.

James P. Chapman, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James B. Zagel, Louis B. Garippo and William J. Martin, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from an order that Clarence M. Dunagan, an attorney, be found guilty of contempt of court and fined $1,000. In its order the court found that "the actions of the Respondent [appellant] were designed to and did, in fact, mislead this Court and jury"; and that "the actions of the Respondent [appellant] were calculated to and did embarrass, hinder and obstruct this Court in the administration of justice."

Appellant was the attorney of record for three persons (all employed by the Cook County Sheriff's Office), including one John Chaconas, who were defendants in a perjury proceeding. The perjury allegedly was committed before a Grand Jury investigating the theft of drugs from the Zahn Drug Company warehouse.[1] The contempt

---

[1] The prosecutor in his opening statement in the perjury trial asserted that the evidence would show that John Chaconas of the Cook County Sheriff's Office registered for Room 31 at the Caravelle Motel, under the name of John Matheos, on January 6, 1964 (a few months after the burglary); that a raid was shortly thereafter conducted at the motel by Richard Cain, James Donnelly and William Witsman, also of the Cook County Sheriff's Office; that some of the stolen drugs were recovered from Room 31, but no one was found in the room; that Donnelly subsequently telephoned Louis Zahn and asked if he (Zahn) wished to purchase some of the merchandise stolen from the warehouse; that subsequently a Grand Jury investigation was begun concerning the circumstances of the recovery of the merchandise from the motel; that during the investigation Chaconas testified that he was sent to the motel for surveillance and never rented the room; that Witsman testified that he was with

order arose from appellant's alleged deceptive maneuvers in attempting to discredit important evidence of the prosecution, People's Exhibit 2, which was a duplicate registration card from the Caravelle Motel allegedly executed in the name of John Matheos by John Chaconas, and bearing the number 6927. Its purpose was to show that Chaconas had registered at the motel for Room 31 under an assumed name prior to a raid conducted at the motel by the Cook County Sheriff's Office.

The prosecutor, in his opening statement to the jury, described the registration system of the motel:

> The Caravelle Motel has a rather unusual way of registering their clients and people who come in to rent rooms. They have a white registration card, and it's attached to a blue or greenish blue duplicate, and when you write on the original you automatically make a carbon on the duplicate. Most motels don't bother with this duplicate, but the Caravelle did have such a system. They put the white card in the slot and the blue card goes back in the office and they keep that with the day's records and they leave the white card out in front.

Appellant, in his opening statement, asserted that the motel actually had two registration systems:

> I expect, further, to show that they had a duplicate registration method in that motel. That the elaborate method by which Mr. Garippo explained Giancanna's method of registering guests was only one of the methods they had. That was a card with a carbon. Another was loose cards that, if you

Chaconas and corroborated the latter's story; and then Cain, Donnelly, Witsman and Chaconas testified that Chaconas was present at the time of the recovery of the drugs.

It was that testimony of the aforesaid persons that the prosecution in the perjury trial sought to prove as untrue.

wanted the room only for a short period of time, you registered in on that card and it was subsequently destroyed. That those cards, the original cards, the one they kept for their own records or for somebody's records, were numbered in numerical order, and that the ones they used for the hasty guests all carried the same number [6927]. And when Brackenbury [of the State's Attorney's police] went to the Caravelle and talked to Romeo Torsiello or Frank Kozie, the operators of that motel, he obtained a carbon copy not an original, of card number 6927, which was this affluent card that was used if you wish to rent the room temporarily.

Appellant further asserted that Chaconas was sent to the motel office to copy down the name of the registration for Room 31; that he copied it on another of the white cards bearing the number 6927, which allegedly was People's Exhibit 2.

During the course of the trial appellant had marked as Defendants' Exhibits 2, 3 and 4 for identification three white cards containing information identical to the information contained on People's Exhibit 2 and all bearing the number 6927. In his cross-examination of various witnesses for the prosecution appellant showed one or more of the aforesaid defendants' exhibits to the witnesses and inquired of them as to whether. or not they were the same as or identical to the cards used at the Caravelle Motel. Mrs. Sanders, the day desk clerk at the motel, testified that the registration cards on the desk were in numerical sequence and there was only one card bearing the number 6927. She further testified that Defendants' Exhibits 2, 3 and 4 were all numbered 6927 and were identical to People's Exhibit 2. Appellant then turned to the prosecutor and asked the number written on People's Exhibit 2. After being told it was 6927, appellant replied: "I'm not surprised." On

120

cross-examination of Romeo Torsiello, manager of the motel, appellant elicited testimony as to extra registration cards which were kept on the desk. Also during cross-examination by appellant Anthony Kozie, a part-time desk clerk, was shown Defendants' Exhibit 4 and stated that the number was identical to that on People's Exhibit 2. Appellant then asked the witness detailed questions as to the difference between Defendants' Exhibits 4 and 11, the latter being a card used in the registration system installed long subsequent to the day of the raid.

Subsequently, the prosecution called as a witness one James Leahy, president of the American Hotel Registry Company, who stated that at appellant's request he printed six cards similar to those used by the Caravelle Motel but refused appellant's request to print the number 6927 thereon. Only after this testimony was elicited did appellant tell the court outside the presence of the jury that at his direction the number 6927 was placed upon the cards, and that it was his intention to show how easy it was to print the number on the cards (a point which he never made to the jury). Sergeant Moran, of the Sheriff's Police, was called as a court's witness and testified that he picked up six cards from Leahy and delivered them to appellant.

The trial judge was led to believe that Defendants' Exhibits 2, 3 and 4 were those cards referred to by appellant in his opening argument, stating:

> That the purpose of this was to attempt to show this jury, in line with the Opening Statement made by Mr. Dunagan, that cards No. 6927 was a card, a large supply of which were kept at the motel and used by various guests and to leave this jury and this court with the impression that there were numbers of cards 6927 in this place. At no time did Mr. Dunagan make known to the court or to any-

one else, to my knowledge, that Defendants' Exhibits 2, 3 and 4 were, in fact, evidence which he had manufactured for use in this case. And the sole purpose, so far as the court is concerned, for the use of these cards, was to leave this jury and this court with the impression that 6927 was a card of one of a number of cards which were used by the motel of which there is no proof in this case.

That People's Exhibit No. 2, which the State alleges is a card actually used by the motel and identified by the witness Leahy as such, is somewhat different from Defendants' Exhibit 11, which is also, evidently, a card used by the motel. That the number on People's Exhibit 2 is "6927" and that the number on Defendants' Exhibit 11 is "26002"; and, according to the testimony of the witness Leahy, is one of a batch of cards which was printed some time long after the events in this case had come about. That the only difference in the cards appears to be that the numbering machine used on People's Exhibit 2 and Defendants' Exhibit 11 is different.

In his order the trial judge stated that over objection he allowed the line of cross-examination followed by appellant because he was "under the impression that the cards were legitimate items of evidence which were designed to assist the Court and the jury in the determination of this cause."

Appellant contends that: (1) the facts stated in the court's order are insufficient to support the finding of contempt; (2) the record in the case cannot be examined by the reviewing court to supply additional facts; (3) even if the record could be reviewed, the facts are insufficient to prove him guilty beyond a reasonable doubt; and (4) the trial judge improperly considered matters which did not occur in his presence.

We will not consider the question as to wheher the facts specified in the contempt order alone are sufficient to support a finding of contempt, since the reviewing court may examine the report of proceedings which is incorporated into the record on review. Although defendant relies upon People v. Loughran, 2 Ill2d 258, 118 NE2d 310, in support of his contention that the court of review is not empowered to examine the record, the Supreme Court in that case stated at page 265:

> We have read the record of plaintiff in error's argument to the jury [referring to the contemnor's argument] . . . . [W]e see nothing in the record indicating that the court was embarrassed . . . .

In People ex rel. Morgan v. Mulliken, 41 Ill App2d 282, 283, 190 NE2d 502, the court stated:

> A report of proceedings as to what actually occurred in open court upon the trial of these cases in connection with the subject matter of the contempt order is incorporated in the record on appeal. We therefore look to the report of proceedings rather than the contempt order to determine whether the contempt order was correct. People v. White, 8 Ill App2d 428, 131 NE2d 803.

It was within the discretion of the trial judge to reject the explanation proffered by appellant for his conduct. People v. Hodge, 23 Ill2d 425, 178 NE2d 354. If appellant's avowed purpose in using the cards in question was to show the ease with which the number 6927 could be printed on cards identical in form to those used by the motel, but not connected therewith, then he should have informed the judge of their lack of authenticity. This explanation, however, was not advanced until after the manufactured cards were used in the cross-examination of witnesses for the prosecution and

after Leahy had testified as to their origin. Under all the evidence we find that the trial judge did not abuse his discretion in refusing to accept appellant's belated and inconsistent explanation. The fact that appellant was not successful in his attempt to mislead the court and jury does not preclude a finding of contempt. People v. Berof, 367 Ill 454, 11 NE2d 936.

Appellant also argues that the trial judge in his order of contempt improperly referred to the ordering, preparation and delivery of the cards in question since none of the aforesaid transpired in his presence. We find no error. Moreover, appellant admitted his acts in open court. People v. Berof, supra; People v. Freeman, 256 Ill App 233.

After examining the order of contempt and the report of proceedings we find that the facts are sufficient to support the finding of contempt. Therefore the order of the trial court finding appellant guilty of contempt and imposing a fine of $1,000 is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.