*In re* MATTER OF RONALD E. MAGNES, Contemnor-Appellant.

(No. 55543; 

First District—October 11, 1972.

*Rehearing denied November 22, 1972.*

BURMAN, J., dissenting.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James S. Veldman, Assistant State's Attorneys, of counsel,) for appellant.

Ellis B. Rosenzweig, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from two orders entered on October 21, 1970, by a judge of the Circuit Court of Cook County, Minor K. Wilson, finding Ronald E. Magnes, an Assistant State's Attorney, in direct contempt of court for actions occurring on two separate occasions and fining him the sum of $50.00 for each of the contemptuous actions. This is, in effect, two appeals of two separate cases.

The issues on review are whether an attorney was in direct contempt of court when he refused to abide by a ruling of the trial judge and persisted in pursuing a line of questioning and arguing that the court

was refusing to respect the case law, and whether an attorney was in direct contempt of court when he was late for court, delayed the trial, and was argumentative and insulting in his demeanor toward the court.

On September 24, 1970, Judge Wilson advised Assistant State's Attorney Magnes that there were two cases assigned to his courtroom the next day because the fourth term would expire then. As a consequence, he advised him that they would begin picking a jury at 9:00 A.M. the following morning. The next day Mr. Magnes arrived in the courtroom about 9:20 after being telephoned by Judge Wilson's bailiff. When Mr. Magnes arrived, the judge was on the bench, the panel of prospective jurors was seated in the jury box, and the defendant, appearing pro se, was seated with his advisor at counsel table. Mr. Magnes requested and was granted a conference in chambers.

In chambers, Mr. Magnes said he had not expected that a jury could be gotten at such an early hour. Judge Wilson stated he had waited until 9:20 for him to arrive and was told by his bailiff that the State's Attorney was on his way and that he wished to expedite matters.

After some colloquy, Judge Wilson characterized Mr. Magnes' present and past conduct as reprehensible. Then the following exchange took place:

"THE COURT: And if you can't get here on time there is only one person to blame, and that is yourself. Now I am ready to start this trial.

MR. MAGNES: Your Honor, you have either a conscious or unconscious prejudice against me or the State's Attorney's Office, one or the other.

THE COURT: It is because of your conduct.

MR. MAGNES: It is not my conduct, I say respectfully. I am old enough—

THE COURT: You don't say it respectfully.

MR. MAGNES: I am old and wise enough to have my own opinion concerning the matter. And I do believe you have a preoccupation with wanting to inconvenience and wanting to criticize, whenever possible, either me or the State's Attorney personally. And that is unfortunate.

THE COURT: That is not true.

MR. MAGNES: Those actions will speak louder than those words, Your Honor.

THE COURT: The only criticism I have around here is your deplorable conduct in this court.

MR. MAGNES: Cite me one incident of this deplorable conduct.

THE COURT: Just by your last comment, for one example."

During the colloquy which ensued, Judge Wilson denied Mr. Magnes' motion for a recess to await another Assistant State's Attorney and a motion for a recess to allow the jurors to relax in the corridor. When the latter motion was denied, Mr. Magnes accused the court of imposing upon the jury. The court then fined Mr. Magnes $50.00 for contempt.

■■ Contempt of court has been defined as "conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." *In re Estate of Melody* (1969), 42 Ill.2d 451.

■■ The remark for which the contemnor was fined must be evaluated in the context of the situation. He had been asked by the judge the previous day to be in court at 9:00 A.M., but he did not arrive until after 9:20 after he had been called by the judge's bailiff. His excuse was "that I had not expected the jury to be in the courtroom this early." In *People v. Buster* (1966), 77 Ill.App.2d 224, a contempt order was affirmed against a defendant's counsel when he failed to appear at the time designated. The court said:

> "One of the primary duties of an attorney is that owed to the court. He is an officer of the court and owes to the court a duty to be obedient to its rules and orders. When engaged in litigation, he owes a duty to the court to appear before it upon notice and to assist the court in the expeditious consideration and disposal of pending cases."

■■ While the court may have excused Mr. Magnes for being late, he also harangued the court and attempted to delay proceedings twice with motions for recess, knowing full well the pressure of time under which the court was operating. Finally, he accused the judge of imposing on the jury. In this context the remark was a derogation of the authority and dignity of the court.

The second instance of contempt took place on October 14, 1970. Mr. Magnes was cross-examining a police officer with regard to the identification of photographs by two individuals at the police station. After numerous objections to the line of questioning had been sustained by the court, there was a conference in chambers:

> "THE COURT: Now, Mr. Magnes, there is case after case which holds that it is quite improper to have a detective or a police officer testifying to somebody else's identification.
>
> MR. MAGNES: I am not making reference through this witness's testimony to the actual identification. I am making reference to certain procedures and certain activities respecting these wit-

nesses taking place at the police Station. I think there is a very valid and identifiable distinction.

THE COURT: I don't agree.

MR. MAGNES: I have cases to support it.

THE COURT: I don't agree with you and I tell you now I don't want this kind of testimony before this jury.

MR. MAGNES: May I present to you case law to support my position?

THE COURT: No, you may not.

MR. MAGNES: I make reference—

THE COURT: I don't want your case law.

MR. MAGNES: —to People vs. Townsend, an Illinois case.

THE COURT: I don't want your case.

MR. MAGNES: You wish to ignore that?

THE COURT: I wish to ignore that.

MR. MAGNES: Have you read that case?

THE COURT: I forbid you to ask any questions along that line.

MR. MAGNES: Have you read that case?

THE COURT: I have.

MR. MAGNES: In spite of that case, you refuse—

THE COURT: Mr. Magnes, I have given you an order. I don't want any more testimony from this officer along this line.

MR. MAGNES: You have made references out there in court that they are supposed to ignore the identification procedure taking place at the police station. What kind of an effect does it have on a jury? You have told them from your position in this court-room, as judge, that they are to ignore an identification made following an incident.

THE COURT: I don't want any more of your lip. I am fining you right now for that kind of statement to me. Fifty dollars."

Mr. Magnes claims he was found in contempt for a single remark, but the above colloquy shows this was not the case. It was his persistence in the face of clear and proper rulings which finally exhausted the patience of the judge. He exceeded the limits of his proper role and hindered rather than helped the search for truth. After reading the record, it is also worthy of note that the ruling made by the trial judge was entirely correct, in that the *Townsend* case, mentioned by Mr. Magnes, holds contrary to his position and supports the judge.

The contemnor argues his conduct was merely that of an advocate and was not legally contemptuous. The trial judge could see the con-

temnor's mannerisms and hear the tone of his voice. The contemnor calls this court's attention to two recent cases of the Seventh Federal Circuit rendered on May 11, 1972: *United States v. Seale*, No. 18246, and *In the Matter of David Dellinger*, No. 18294. These cases are cited for the proposition that to be guilty of contempt of court one must have a specific intent to obstruct the court and cannot be guilty of contempt for merely being obnoxious. In *In the Matter of David Dellinger*, the court stated:

> "Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting in their client's behalf."

■■ We do not agree with the Federal Court that an attorney has the right to go so far in his conduct as to appear obnoxious to the court; however, this case does not give aid to the contemnor because the court specifically denounced such behavior as exhibited by the contemnor:

> "However, this is not to say that attorneys may press their positions beyond the court's insistent direction to desist. On the contrary, the necessity for orderly administration of justice compels the view that the judge must have the power to set limits on argument."

We agree with the above statement and with the following statement in the *Seale* case, where the court stated:

> "On the positive side of the obstruction question, failure to heed the directive of the court to desist from arguing, to sit down, or to remain quiet may indeed constitute an actual material obstruction to the administration of justice. The unmistakable implication of In re McConnell, 370 U.S. 230, 235, 236, is that defiance of the court's order to cease questioning would have actually obstructed the proceedings. As governor of the trial, the trial judge must have the authority necessary to ensure the orderly and expeditious progress of the proceedings. His directives in exercise of this authority must be obeyed; otherwise the clear result would be courtroom chaos."

■■ In the case at bar, the contemnor either knew or should have known his conduct was wrongful. He was given considerable leeway in presenting his contention and was aware the judge understood the point he was making.

■■ The contemnor also argues that the orders of October 21, 1970, do not properly or sufficiently set out the reasons for the findings of contempt as required by *People v. Loughran* (1954), 2 Ill.2d 258. We need not consider the question because this court can examine the report of proceedings which is incorporated into the record on review

(*In re Dunagan* (1967), 80 Ill.App.2d 117; *People v. Pearson* (1968), 98 Ill.App.2d 203), which we have done.

For the reasons stated, we find the trial judge was correct in entering the contempt order in both cases, and they are hereby affirmed.

Orders affirmed.

ADESKO, J., concurs.

Mr. JUSTICE BURMAN dissenting:

I disagree with the conclusion of the majority. I do not believe that the conduct of Mr. Magnes on either of the two occasions in question rose to the level of contempt.

In the first instance, the record reveals that on September 24, 1970, Judge Wilson and Mr. Magnes had discussed the possibility of convening court at nine o'clock the following morning to begin the trial of *People v. Lucien*, a case in which the period of the fourth term rule was about to expire. Mr. Magnes stated that he did not believe that a venire could be assembled at that hour, and no further conversation on the matter was had, leaving it uncertain as to whether court would convene at nine o'clock. On September 25, Mr. Magnes arrived in the courtroom at 9:20 and found the public defender seated at the counsel table, the venire in the box and the court apparently awaiting his presence. Upon learning that the defendant had attempted to make a pro se motion prior to his arrival, Mr. Magnes requested a conference in chambers. Once in chambers, he thanked the court for its courtesy and expressed his concern that part of the proceeding had transpired in his absence, and that he had been made to appear dilatory in the eyes of the prospective jurors. During the conference, both the court and Mr. Magnes exchanged heated words concerning Mr. Magnes's past conduct, which the court characterized as "deplorable", and the urgency of the matters before the court. Mr. Magnes noted that the conference, which had occurred at his request, would probably be lengthy and requested that the jurors be allowed to leave the box and relax in the hall. This request was denied, and Mr. Magnes made the statement in chambers, "Your Honor, if you wish to impose upon that jury that is your decision to make.", for which he was held in contempt.

To be sustained, a contempt order must meet the standard of "a serious and imminent threat to the integrity of the trial". (*Craig v. Harney* (1947), 331 U.S. 367, 373.) In *In re McConnell* (1962), 370 U.S. 230, 234, the United States Supreme Court reviewed the summary contempt power and concluded that it was a drastic remedy, to be invoked *only* in the face of conduct which actually obstructs the court in the

performance of its judicial function. Even the dissent of Mr. Justice Harlan, who felt that a court should not be so severely limited, recognized that "the contempt power should always be exercised circumspectly and *dispassionately,* particularly when called into play by the conduct of an attorney in the course of sharply contested litigation." (370 U.S. at 237 (emphasis added).) The Illinois Supreme Court has frequently held that contemptuous conduct is limited to that which is "calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or to bring the administration of law into disrepute." *People v. Miller* (1972), 51 Ill.2d 76, 78, 281 N.E.2d 292, 293; *In re Estate of Melody* (1969), 42 Ill.2d 451, 452, 248, N.E.2d 104, 105; *People v. Gholsen* (1952), 412 Ill. 294, 298, 106 N.E.2d 333, 335-36.

In *People v. Pearson* (1968), 98 Ill.App.2d 203, 240 N.E.2d 337, the Appellate Court considered whether the remark "I think your bias is showing", made by an attorney in open court, could be the basis of a contempt conviction. Noting that the general atmosphere of the trial was strained and heated and that on several occasions the court had made insulting and provocative remarks to counsel, it concluded that, in light of all of the circumstances of the case, the remark was not calculated to embarrass, hinder or obstruct the court in its administration of justice. (98 Ill.App.2d at 212, 240 N.E.2d at 342.) Likewise in *People v. Rongetti* (1931), 344 Ill. 107, 176 N.E. 292, the court, in reversing several contempt convictions, stated, "plaintiff in error was given considerable provocation by the court by his actions and rulings and stinging remarks * * *." 344 Ill. at 119, 176 N.E. at 296.

In the present case it cannot be said that the remarks made by Mr. Magnes, however unfortunate and improper, were such that they were calculated to embarrass the court in its administration of justice or obstruct the proceeding. The exchange occurred after a prolonged period of trials which had been hectic for both the court and Mr. Magnes. The record indicates that there was friction between the court and Mr. Magnes because of past events and that neither was capable of reacting dispassionately to the events which transpired on the morning of September 25. Mr. Magnes was legitimately concerned that he had been prejudiced in the eyes of the jury. The statement was made out of the presence of the jury, and it appears that the trial was commenced without further delay shortly thereafter. In view of these circumstances, the remarks made by Mr. Magnes were not sufficient to form the basis of a conviction for contempt. The order should be reversed.

The second instance occurred on October 14, 1970. During the direct examination of a police officer, Mr. Magnes established that the officer

had shown witnesses to a shooting, some pictures, then asked whether the officer had said anything to them.

"A. Yes, sir.

Q. What did you say?

Mr. Gerber: Objection.

The Court: Now, Mr. Magnes, you know better than to get involved in hearsay at this point."

Magnes then rephrased the question.

"Q. Other than tendering some 100 photographs to the two individuals then at the police station, did you say anything else with respect to their examination of these photographs.

A. No, sir.

Q. What then occurred, Detective Creighton?

A. They identified two pictures of being those of the individuals involved in the shooting.

The Court: Now, the jury will disregard that statement as to whether they made any identification at that time. That is not proper, and not to be considered in any way by this jury. Please, Mr. Magnes.

Mr. Magnes: Q. Did the two individuals have an opportunity to examine the photographs?

A. Yes, sir, they did.

Q. Following their examination, were certain photographs chosen?

A. Yes, sir, they were.

The Court: Now, the jury will disregard that statement.

Mr. Magnes: Your honor, may I be heard at side bar?

The Court: Yes, sir."

As the foregoing demonstrates, Mr. Magnes attempted several times, unsuccessfully, to rephrase his question, then requested a side bar conference. The conference was moved into chambers, and an exchange occurred between Mr. Magnes and the court which is set forth in the majority opinion. As a result of this exchange, Mr. Magnes was found to be in contempt. The contempt order stated that he had pursued a line of questioning after an objection thereto had been sustained and had persistently argued a point of law after the court had indicated that it did not wish to hear further argument.

In *Holt v. Virginia* (1965), 381 U.S. 131, 136-38, the United States Supreme Court held that a stand taken by counsel in the best interest of his client cannot serve as the basis for a finding of contempt against the attorney. In *In the Matter of David Dellinger* (7th Cir. 1972), 461 F.2d 389 the court stated:

"Where * * * the conduct complained of is that of an attorney engaged in the representation of a litigant, the search for [the] essential elements of the crime of contempt must be made with full appreciation of the contentious role of trial counsel and his duty of zealous representation of his client's interests."

461 F.2d at 397. In the present case, Mr. Magnes did nothing more than take a stand which he believed to be in the best interests of his client, which was his duty as an advocate. He believed it important that the testimony concerning whether any photograph had been selected be introduced, and when objection was raised to his initial question he attempted to phrase a proper question which would elicit the desired information. When the court refused to permit what Mr. Magnes thought was a proper question, he requested a side bar conference and offered authority to support his position. The exchange which led to the allegedly contemptuous remark occurred when the court refused to permit Mr. Magnes to discuss the cases and to consider the authority offered.

In *In the Matter of David Dellinger et al., supra,* the court stated: "Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting in their client's behalf." (461 F.2d at 400.) The majority disagrees with this statement, adopting a more moderate view. In the present case, the line of questioning set forth above and the colloquy in chambers, set forth in the majority opinion, are all that occurred with respect to the alleged contempt. From these, it is apparent that Mr. Magnes was not unduly persistent in attempting to ask the questions and in urging his authority upon the court. Whatever the standard to be applied, the conduct of Mr. Magnes on this occasion was nothing more than that of an advocate.

It is likely that the former differences between Mr. Magnes and the court came into play during the conference. The result of this was that Mr. Magnes made some remarks which may have been improper. Based upon the record, however, I would characterize Mr. Magnes's action as those of an industrious attorney who believed that he was acting in the best interests of his client. The most that can be said is that in the atmosphere created by the pressures of the trial and the volume of work before the court there were strained and heated remarks. As much as these remarks are to be condemned, I do not believe that they were calculated to embarrass the court or obstruct the proceeding. For these reasons I would reverse both orders.