In re CONTEMPT OF MORRIS W. ELLIS (The People of the State of Illinois, Petitioner-Appellee, v. Morris W. Ellis, Respondent-Appellant).

Fourth District   No. 4—90—0256

Opinion filed November 26, 1990.—Rehearing denied January 15, 1991.

Morris W. Ellis, *pro se*, and Phyllis Ellis Rosenfeld, both of Ellis & Ellis, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Douglas K. Smith, Assistant Attorneys General, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Morris W. Ellis, was held in direct criminal contempt of court in January 1990, based upon his conduct in a small claims proceeding in which he was appearing as counsel. The trial court subsequently entered a written order of contempt and later denied defendant's motion to vacate or reconsider.

Defendant was placed on court supervision for a period of 12 months, subject to the conditions that he pay court costs and perform 20 hours of public service work with the Legal Assistance Foundation of Chicago.

Defendant appeals, arguing that his conduct was not calculated or intended to embarrass, hinder, or obstruct the court, but instead was

a good-faith attempt to represent his client and did not constitute direct criminal contempt of court.

We disagree and affirm.

The facts in this case are not complicated. Defendant appeared as counsel for a party in a small claims proceeding who had been defaulted, and at the hearing in question, defendant had argued a motion to vacate or reconsider the default judgment. After both defendant and counsel for plaintiff had presented their initial arguments, the court asked defendant if there was anything else he wished to state, and defendant made a rebuttal argument. When both counsel had completed their arguments, the court began to state its ruling and the reasons therefor. As the court was doing so, it was interrupted by defendant, and the court stated the following: "No. Mr. Ellis, you had your turn. Now it is my turn. Don't interrupt." The court continued with its remarks, and, as it concluded, the record shows the following:

"THE COURT: Show the motion is denied. Prior judgment will—

MR. ELLIS: May I—

THE COURT: —stand.

MR. ELLIS: May I—

THE COURT: No.

MR. ELLIS: I can't hear—

THE COURT: I've ruled.

MR. ELLIS: Well, wait a minute. You—

THE COURT: Mr. Ellis.

MR. ELLIS: —you said on an affidavit—

THE COURT: Mr. Ellis. You want to go—

MR. ELLIS: Well, wait a minute. You said—

THE COURT: Mr. Ellis.

MR. ELLIS: —there was an affidavit filed. And the defendant never received an affidavit.

THE COURT: Take him out before he is held in contempt of court.

THE BAILIFF: Mr. Ellis.

MR. ELLIS: He never received the affidavit.

THE COURT: Take him out or he will be held in contempt of court.

You do not argue with this court, Mr. Ellis.

MR. ELLIS: Well, we're going to file a notice of appeal in this case.

THE COURT: That's your right, Mr. Ellis.

MR. ELLIS: Your [sic] damn right that's my right:

THE COURT: Mr. Ellis, get back here right now. Bring him back here.

Show in this matter that the attorney by the name of Ellis from Chicago has argued with the court when the Court was ruling. After the Court ruled, he wanted to further argue with the Court. Was told he should not do that and to leave. As he was being taken out of the courtroom by the court officer, he told the judge that the judge was damn right, language not to be used in the courtroom. That this attorney is held in direct criminal contempt of court.

As you know, Mr. Ellis, I can sentence you to jail right now for up to six months. I can fine you up to $500. But I don't know what I should do at this time, so I'm going to order you to report to the court services department this date for a pre-sentence report to determine what your sentence should be for being held in direct criminal contempt of court.

No. Mr. Ellis—

MR. ELLIS: Your Honor—

THE COURT: —you have—

MR. ELLIS: —did not receive a hearing. Am I entitled to be heard?

THE COURT: Mr. Ellis, if you know anything about the law, you know that you are not entitled to [a] hearing for direct criminal contempt of court. At this time you will go to the Champaign County Court Services Department for a pre-sentence report to be prepared for you for your being held in direct criminal contempt of court for the things that I have stated already. You will go there this date and we will continue this matter for a sentencing hearing as to whether you should be held in direct—or as to what your sentence should be on February 28th at 11:30 in this courtroom.

MR. ELLIS: Was the Court saying what I said that was contemptuous?

THE COURT: Aside from trying to talk when I was talking, Mr. Ellis, aside from not being quiet when I was talking, aside from arguing with me after I have ruled, it's for telling—saying the word damn in the courtroom in a loud voice when I told you to leave.

MR. ELLIS: All I said was 'damn right', Judge.

THE COURT: Well, Mr. Ellis—

MR. ELLIS: All I said—

THE COURT: Mr. Ellis.

MR. ELLIS: And Your Honor should know that that was not meant to be contemptuous. And that is a severe punishment for something that I said (inaudible) regarding the appeal of the case. I asked to serve a notice of appeal and I'm going to file an appeal in this case. That's all I said.

THE COURT: Mr. Ellis, I heard what you said. You will have a—

MR. ELLIS: All right.

THE COURT: —hearing date—

MR. ELLIS: Okay.

THE COURT: —on February 28th. I would suggest that you take this across the street to the court services office for the pre-sentence report to be prepared. And as you know, you can have [an] attorney here to represent you, and your attorney can file any motions they wish at that time."

Four days after this hearing, the trial court filed an order of direct criminal contempt of court, which in its entirety reads as follows:

"Cause number 89—S—2204, in the Circuit Court of Champaign County, was called to be heard on January 29, 1990, upon the motion of the Defendant Rosenfeld, filed January 4, 1990. Present for the Plaintiff Ward was attorney Terry Prillaman and present for the Defendant was the contemner, Morris W. Ellis.

At the time that the Defendant's motion was called for hearing, also present in the courtroom were some unidentified persons with the contemner, one private attorney representing a defendant, three pro-se plaintiffs and two pro-se defendants waiting for their cases to be heard.

When the motion filed January 4, 1990, in 89—S—2204, was called, Morris W. Ellis argued the motion for the Defendant. Terry Prillaman then argued his client[']s position. Morris Ellis was then allowed a rebuttal argument for the Defendant. After making sure that each party had said what they desired to say, the Court ruled, denying the motion filed January 4, 1990. At that time, the following occurred:

1) Morris W. Ellis asked to be heard for further argument on his motion and the Court replied 'no.' Mr. Ellis then asked once again to be heard and the Court stated: 'I have ruled.' Mr. Ellis continued to be asked to be heard and the Court raised its voice stating: 'Mr. Ellis, no.'

2) At that time, Mr. Ellis did not stop but continued and began to make his argument with reference to the matter

that the Court had already ruled on. The Court attempted to stop Mr. Ellis from continuing his argument by saying 'Mr. Ellis,' but Mr. Ellis kept on making his argument before the Court.

3) The Court at this time could not continue on with the motion call and call any of the other cases that were still waiting to be heard.

4) Mr. Ellis was still standing in front of the bench and arguing his position to the Court and the Court looked over towards Mr. Ellis and the Court Security Officer who was approximately five to six feet beyond Mr. Ellis and requested in a voice loud enough so everyone in the courtroom could hear, that the Court Security Officer [should] 'take Mr. Ellis out so he would not be held in criminal contempt of court.'

5) Mr. Ellis kept talking and arguing his case even though the Court had just told him he would be held in contempt of court. At this time, the Court Security Officer was approaching Mr. Ellis while he was arguing to the Court.

6) The Court again told the Officer and Mr. Ellis who were now next to each other that the Officer should 'take Mr. Ellis out of the courtroom or he would be held in criminal contempt of court' and again told Mr. Ellis not to argue anymore with the Court.

7) During this entire incident, Mr. Ellis was continuously speaking. At times, the Court had to raise its voice so as to be heard over Mr. Ellis' in its attempt to get Mr. Ellis to stop speaking. Mr. Ellis however kept arguing, totally frustrating the Court's effort to proceed with other cases. The Court could only get a few words in at a time in its attempt to put a stop to Mr. Ellis' conduct.

8) The Court Security Officer had her hand on Mr. Ellis' arm and was walking him out of the courtroom towards the back of the Court away from the bench and the Court could hear the Court Security Officer telling Mr. Ellis to quiet down. At this time, when Mr. Ellis was approximately half way out of the courtroom he yelled back to the Court words to the effect that he wanted the Court to know that he would file a notice of appeal. To which the Court responded: 'That is your right, Mr. Ellis.'

9) By this time the Court Security Officer had Mr. Ellis all the way across the courtroom to the door and Mr. Ellis raised his hand in the air and yelled across the courtroom at

the Court: 'Your [*sic*] damn right, it's my right.'

10) At that time the Court ordered Mr. Ellis to be brought back before the bench and held him in direct criminal contempt of court.

11) The Court continued the contempt matter for a sentencing hearing and advised the contemner that he had a right to have counsel present at the sentencing hearing.

The contemner's conduct after the Court had ruled on the motion filed January 4, 1990, in 89—S—2204 was such that it obstructed the Court in its administration of justice, in that until court had finally finished holding the contemner in direct criminal contempt of court, the Court could not call any other cases in the courtroom that were waiting to be called. Further, the Court finds that the contemner's conduct was calculated to embarrass the Court by continually arguing after the Court had ruled, by yelling in the courtroom, by not letting the Court talk in that he was continually interrupting the Court with his argument. Further the Court finds that the contemner's action put the Court in disrepute by showing a total lack of respect for the Court's authority and the administration of justice. Further, the body motions and profanity used by the Defendant were such as to show to all those in the courtroom that the contemner had a total lack of respect for the proceedings and the Court.

The Court finds that it has jurisdiction over the parties hereto and the subject matter herein. Further, the Court finds that the contemner's actions as described above were such as to constitute direct criminal contempt of court.

Wherefore, the contemner, Morris W. Ellis, is found to be in direct criminal contempt of court. Contemner was ordered to report on January 29, 1990, to the Champaign County Court Services Department for the preparation of a pre-sentence report for sentencing hearing on his direct criminal contempt of court and the sentencing hearing is set for February 28, 1990, at 11:30 a.m. in Courtroom J, Champaign County Correctional Center."

■ In *People v. Graves* (1979), 74 Ill. 2d 279, 384 N.E.2d 1311, and *People v. Miller* (1972), 51 Ill. 2d 76, 281 N.E.2d 292, the Illinois Supreme Court considered the issue of attorneys who had been held in direct criminal contempt based upon their behavior in court. In *Graves*, the supreme court stated that contempt of court was defined as " 'conduct calculated to embarrass, hinder or obstruct a court in its

administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute.' " (*Graves*, 74 Ill. 2d at 284, 384 N.E.2d at 1314, quoting *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105.) The court also wrote the following:

> "As a reviewing court, we determine whether there is sufficient evidence to support the finding of contempt [citation] and whether the judge considered only facts within his personal knowledge. The latter requirement is peculiar to cases of direct contempt such as that involved here, and is warranted by the summary nature of direct contempt proceedings." *Graves*, 74 Ill. 2d at 284, 384 N.E.2d at 1314.

In *Miller*, the supreme court stated the following:

> "Direct contempt is predicated upon specific misconduct which interferes with the orderly administration of justice, and therefore an order imposing punishment for direct contempt must state, or the record must show, the specific acts upon which it is based." *Miller*, 51 Ill. 2d at 78, 281 N.E.2d at 293.

This court recently spoke of direct criminal contempt proceedings as follows:

> "Because the respondent is entitled to appeal a direct contempt conviction, the record made in the trial court must *** be sufficient to permit a reviewing court to determine whether the trial court had jurisdiction to enter the contempt order. Thus, the facts supporting the finding of contempt must be fully set forth in the contempt order [citation] or must appear in the transcript of the proceedings at which the contempt finding was made." *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 49, 558 N.E.2d 404, 419.

■ The order of direct criminal contempt entered in the present case is in accordance with the aforesaid standards. We find that the facts supporting the findings of direct criminal contempt in this case are fully set forth both in the contempt order and in the transcript of proceedings as well.

■ We are unpersuaded by defendant's argument that his conduct was merely that of a vigorous advocate and not contumacious. In *In re Magnes* (1972), 8 Ill. App. 3d 249, 253-54, 290 N.E.2d 378, 382, the court observed that "[t]he trial judge could see the contemnor's mannerisms and hear the tone of his voice." That observation is applicable to this case as well, and there *is no basis on this* record for disregarding the trial court's assessment that, "the body motions and profanity used by the Defendant were such as to show to all those in

the courtroom that the contemner had a total lack of respect for the proceedings and the court."

Defendant asserts that the trial court's holding him in direct criminal contempt for his use of the word "damn" is unjustified. However, as the trial court's findings make clear, defendant's use of the word "damn" was but a minor part of the totality of defendant's inappropriate behavior with which the trial court was confronted.

In support of his argument that the trial court erroneously found him to be in direct criminal contempt, defendant cites *In re Dellinger* (7th Cir. 1972), 461 F.2d 389. We note that in *Magnes* a similar argument was made and the appellate court responded as follows:

"The contemnor calls this court's attention to two recent cases of the Seventh Federal Circuit rendered on May 11, 1972: *United States v. Seale*, No. 18246, and *In the Matter of David Dellinger*, No. 18294. These cases are cited for the proposition that to be guilty of contempt of court one must have a specific intent to obstruct the court and cannot be guilty of contempt for merely being obnoxious. In *In the Matter of David Dellinger*, the court stated:

'Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting in their client's behalf.' [*Dellinger*, 461 F.2d at 400.]

We do not agree with the Federal Court that an attorney has the right to go so far in his conduct as to appear obnoxious to the court; however, this case does not give aid to the contemnor because the court specifically denounced such behavior as exhibited by the contemnor:

'However, this is not to say that attorneys may press their positions beyond the court's insistent direction to desist. On the contrary, the necessity for orderly administration of justice compels the view that the judge must have the power to set limits on argument.' [*Dellinger*, 461 F.2d at 399.]

We agree with the above statement and with the following statement in the *Seale* case, where the court stated:

'On the positive side of the obstruction question, failure to heed the directive of the court to desist from arguing, to sit down, or to remain quiet may indeed constitute an actual material obstruction to the administration of justice. *** As governor of the trial, the trial judge must have the authority necessary to ensure the orderly and expeditious progress of the proceedings. His directives in exercise of this authority

must be obeyed; otherwise the clear result would be courtroom chaos.' " [*United States v. Seale* (7th Cir. 1972), 461 F.2d 345, 371.]

*Magnes*, 8 Ill. App. 3d at 254, 290 N.E.2d at 382.

In an attempt to justify and explain his behavior, defendant makes the following argument to this court:

"Even though the court below stated that there is nothing else to say after it is made clear that the court has ruled, it should be pointed out that the attorney, in representing his client's interests, had a duty and an obligation to his client, to inform the judge that the judge failed to take into consideration, in his ruling, that the plaintiff never served notice upon the defendant that he would seek additional damages at the time the default judgment was entered ***. All the attorney attempted to do was merely inform the judge that the defendant never received the affidavit. Such an act of making the statement was directly related to the issue that the court was to decide, and certainly, the attorney, in doing so, was acting as an advocate for his client."

■ We emphatically reject this argument, and we agree with the statements from *Magnes* that " 'the necessity for orderly administration of justice compels the view that the judge must have the power to set limits on argument.' " (*Magnes*, 8 Ill. App. 3d at 254, 290 N.E.2d at 382, quoting *Dellinger*, 461 F.2d at 399.) When, as here, the trial court has directly and clearly informed counsel that their opportunity for argument is over, that is a nondebatable order, and no misguided sense of advocacy can be permitted to overcome it. If an attorney believes that the trial court's findings of fact or conclusions of law are in error, then that attorney can file a post-trial motion or appeal. His options, however, do not include the privilege of interrupting the trial court as it states its findings or conclusions, nor do his options include the privilege of arguing with the court after its rulings have been made.

For the reasons stated, the judgment and sentence of the circuit court of Champaign County are affirmed.

Affirmed.

KNECHT, P.J., and GREEN, J., concur.